PINE TOP INSURANCE COMPANY; Old Republic Insurance Company; and Twin City Fire Insurance Company, Plaintiffs,

and

Evanston Insurance Company and Industrial Underwriters' Insurance Company, Additional Plaintiffs,

v.

PUBLIC UTILITY DISTRICT NO. 1 OF CHELAN COUNTY; Robert Keiser and Jane Doe Keiser, husband and wife, Defendants,

and

California Union Insurance Company, Additional Defendant.

No. C–86–363–JLQ.

United States District Court, E.D. Washington.

Aug. 11, 1987.

Sidney R. Snyder, Jr., Daniel F. Mullin, Seattle, Wash., for Indus. Underwriters.

Carol Wardell, Wenatchee, Wash., for defendants.

## MEMORANDUM AND ORDER MEMORIALIZING THE ORAL GRANTING OF PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFFS, INTERVENING PLAINTIFF AND DEFENDANT CALIFORNIA UNION INSURANCE COMPANY

QUACKENBUSH, District Judge.

At the August 6, 1987 oral argument of cross-motions for summary judgment, Sidney R. Snyder, Jr. represented plaintiffs; Daniel Mullin appeared for the intervening plaintiff; and Carol Wardell represented defendants Chelan County P.U.D. No. 1 (Chelan P.U.D.) and Robert Keiser.

This diversity action for declaratory relief involves umbrella and excess coverage insurance policies issued to defendants Chelan P.U.D. and Mr. Keiser by six companies: Pine Top Insurance Co., Old Republic Insurance Co., and Twin City Fire Ins. Co. (plaintiffs); Evanston Insurance Co. and Industrial Underwriters Insurance Co. (intervening plaintiffs); and California Union Insurance Co. (additional defendant).[1] Chelan P.U.D. was a member of the Washington Public Power Supply System and was a signatory "participant" in Nuclear Power Plant Projects 4 and 5. Mr. Keiser, an official with the Chelan P.U.D., was a member of the Supply System's Board of Directors. These defendants have been named in several lawsuits. For purposes of these motions, the crux of the allegations in those actions is that Chelan P.U.D. and Mr. Keiser are responsible to the bondholders for misrepresentations and omissions in various official statements or prospectuses.

The only questions before the court center around whether defendants should be covered as to the securities claims against them under the so-called "advertising liability" scope of each policy. There is no issue as to duty to defend.

## COLLATERAL ESTOPPEL

The insurers assert that Chelan P.U.D. and Mr. Keiser are collaterally estopped from relitigating this question of whether the claims are a part of the "advertising liability" because that question was decided against defendants in the earlier state court action before Judge Cone, of Chelan County Superior Court in Wenatchee, Washington. Washington's law governs this matter because, in a diversity case with no federal question additionally at issue, state law governs *res judicata*-type questions. *Angel v. Bullington,* 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); *Aerojet–General Corp. v. Askew,* 511 F.2d 710 (5th Cir.1975).[2]

---

1. Additional plaintiff, Industrial Underwriters Insurance Co. joined California Union as a defendant (Ct.Rec. 9), but those claims were resolved earlier in favor of California Union.

2. This is a full-faith-and-credit notion. To be distinguished is the circumstance in a diversity case where the prior judgment was a federal one. Then, the preclusive effect is governed by federal law. *E.g., Stovall v. Price Waterhouse Co.,* 652 F.2d 537, 540 (5th Cir.1981); *Cemer v. Marathon Oil Co.,* 583 F.2d 830, 831–32 (6th Cir.1978); *Kern v. Hettinger,* 303 F.2d 333, 340 (2d Cir.1962).

Recently, the Washington Supreme Court again addressed the four questions which must be answered affirmatively for the doctrine to apply:

> (1) Was the issue decided in the prior adjudication *identical* with the one presented in the action in question? (2) Was there a *final judgment* on the merits? (3) Was the party against whom the plea is asserted a *party* or in privity with a party to the prior adjudication? (4) Will the application of the doctrine not work an *injustice* on the party against whom the doctrine is to be applied?

*McDaniels v. Carlson,* 108 Wash.2d 299, 301, 738 P.2d 254 (1987). The burden of proof is on the party asserting estoppel, and the *McDaniels* court reemphasized that the policy to be promoted through the doctrine is to prevent "relitigation of an issue or determinative fact after the party estopped has had a full and fair opportunity to present a case." [3] *Id.*

Insurance contract interpretation is a matter of law. *State Farm Gen. Ins. Co. v. Emerson,* 102 Wash.2d 477, 480, 687 P.2d 1139 (1984). Defendants contend that in Washington "offensive" collateral estoppel, if it exists, is limited to issues of fact, but does not apply to questions of law. "Offensive" use occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant previously litigated unsuccessfully against (the same or) a different party.

It appears the distinction between questions of fact or law has come about because the original Restatement of Judgments speaks to "ultimate facts" to which the doctrine applied, to be distinguished from "evidentiary" facts to which the theory did not apply. Now, however, under the Restatement (Second) of Judgments, the question is not whether ultimate or evidentiary questions are before the court, but rather "whether the issue was *actually* recognized by the parties as important *and* by the judge as necessary to the first judgment." Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington,* 60 Wash.L.Rev. 805, 835. "If so, the determination should be conclusive, with an important qualification being whether the significance of the issue for purposes of the subsequent action was sufficiently foreseeable at the time of the *first action."* *Id.; see also* Sections 27 and 28 of the Restatement (Second) of Judgments.[4]

The question becomes whether Washington has adopted or has shown a willingness to adopt the Restatement (Second) approach. Professor Trautman, in his 1985 law review article, quoted above, says that "implicitly" the Washington courts take the Second Restatement approach, or, if they do not, "they should." *Id.*

While the Washington cases since 1985 do not unequivocally "adopt" the Second Restatement on judgments, the opinion writers have cited extensively to it and analyzed the problems before them under the Second Restatement. *See, generally, Fluke Capital & Mgmt. Serv. Co. v. Richmond,* 106 Wash.2d 614, 724 P.2d 356 (1986) (referring to issues of fact or law

---

**3.** In Washington, collateral estoppel (issue preclusion) is different from *res judicata* (claim preclusion) to the extent that with the former the issues must actually have been litigated. *McDaniels,* 108 Wash.2d at 305, 738 P.2d 254. With *res judicata,* if the claim *could* have been litigated in the earlier action, the party against whom the doctrine is invoked is precluded from litigating the claim.

**4.** Section 27 of the Restatement (Second) of Judgments (1982) states:

"When an issue *of fact or law* is *actually* litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

The exceptions to this general rule are stated at Section 28:

"Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

"...

"(2) The issue is one of law *and* (a) the two actions involve claims that are substantially *unrelated,* or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or

"..."

and citing to the Restatement (Second)); *Malland v. Retirement Sys.*, 103 Wash.2d 484, 490, 694 P.2d 16 (1985) (quoting from comment c of the Restatement (Second) as to the meaning of "identity" of matters in the two proceedings); *Alcantara v. Boeing Co.*, 41 Wash.App. 675, 705 P.2d 1222 (1985) (Division One) (quoting from the Restatement (Second) as to an "issue of fact or law"). *Accord, Lange v. Heglund*, 391 F.Supp. 128 (W.D.Wash.1974) (Judge Boldt, applying pre-Restatement (Second) Washington law, did not limit offensive use to state court findings of fact.)

Moreover, notwithstanding Washington's approach that insurance contract interpretation and construction are for the court, referring to the issue before Judge Cone as an unmixed question of law is inaccurate since he construed the policy language in light of the Supply System litigation factual allegations. Accordingly, the matter was a mixed question of fact and law or an application of the law to underlying, undisputed facts. *See also, State Farm Ins.*, 102 Wash.2d at 480, 687 P.2d 1139 (in holding that interpretation is a matter of law, the court further noted that the trial judge may have to act as a fact-finder when interpreting some policies).

Analyzing the problem under the Washington Restatement (Second) approach leaves defendants estopped from arguing that their claims fall within the policy coverage under "advertising liability." As to identity of issues, it is admitted that the policy language construed and interpreted by Judge Cone was identical or substantially identical to the language in this proceeding. *San Telmo Ass'n v. Seattle*, 108 Wash.2d 20, 22–23, 735 P.2d 673 (1987), cited by defendants, is distinguishable. In that case, the doctrine was not used to preclude relitigation of validity of a second ordinance even though the two ordinances covered the same "subject matter" but were only "slightly" different. This was so because the court in that case found the second ordinance was enacted with changes designed to cure the problems with the original invalidated ordinance, *e.g.*, the second ordinance included notice language which apparently the first one did not have.

As such, there was no "identity" of issues. Here, not only is the subject matter identical, but so too is the language identical or nearly identical in the various policies, and admittedly so. While the policies in this case are not the same policies, they were the same type and followed close in time to those construed by Judge Cone. Defendants do not point to any policy language or extrinsic circumstances which raise an inference that the policies are "unrelated" within the meaning of Section 28 of the Second Restatement.

Next, as to the finality element, Judge Cone's decision was final and appealable (decided on cross-motions for summary judgment), and it is undisputed that defendants made a conscious choice not to appeal.

Third, it is undisputed that defendants were parties in the first proceeding.

Lastly, defendants admit they knew of the pendency of this action when they consciously chose to not appeal the first action. Moreover, defendants knew of the pendency of most of the lawsuits against them when the first action was litigated. Consequently, they were motivated to prevail in the first action and admit that their motion for summary judgment in the first action was "fully litigated." Thus, the policies of finality and consistency will *be served by application* of the doctrine in this case.

## MERITS OF COVERAGE QUESTION

■ Even had this court determined collateral estoppel principles should not apply, the further conclusion is that the Supply System litigation claims against defendants do not fall within the advertising liability aspect of plaintiffs' policies. Specifically, at issue is the definition of "unfair competition" torts which are included within advertising liability. The context in which the words are found in the policies is that "an 'advertising liability' shall mean ... (3) piracy or unfair competition or idea misappropriation under an implied contract; ..." In a nutshell, plaintiff insurers contend that the term "unfair competition" is a term of art, and there is a clear distinction under Washington law between claims al-

leged under the common law tort of "unfair competition" against one's competitors, and torts against consumers under the broader statutory framework of "unfair METHODS OF competition." Thus, the insurers contend the phrase unambiguously refers to the narrow common law tort of passing off one's goods for those of another.

Insured defendants concede that "no cause of action for unfair competition is pled" in the Supply System litigation. Yet, they contend that the alleged "conduct" of defendants forms a basis for such a claim because "unfair competition" should not be restricted to its ancient common-law definition of "passing off." Instead, defendants argue for construing the tort as including the more recent "unfair methods of competition," that is, the modern consumer protection aura, particularly since the policy does not define "unfair competition."

In the context of insurance contracts, a policy provision is ambiguous when, on its face, "it is fairly susceptible to two different interpretations, both of which are reasonable." *E–Z Loader v. Travelers Indem. Co.*, 106 Wash.2d 901, 726 P.2d 439 (1986). "However, where the clause in the policy is ambiguous, a meaning and construction most favorable to the insured must be applied, even though the insurer may have intended another meaning." *Id.*

In *Ruder & Finn, Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 439 N.Y.2d 858, 422 N.E.2d 518 (1981), the appellate court reviewed a policy provision identical to the ones in this case. That action involved the refusal to defend two lawsuits in which the allegations encompassed antitrust violations, tortious interference with business relationships, commercial extortion, and "prima facie" tort. The court concluded the term "unfair competition" was unambiguous and under the law had a narrow definition:

> (6) The insurer, on the other hand, while accepting the general rule of construction pertaining to insurance policies—that all ambiguities to the meaning of a policy must be resolved in favor of the insured (*Miller v. Continental Ins. Co.*, 40 N.Y.2d 675, 678, 389 N.Y.S.2d 565, 358 N.E.2d 258)—contends that the definition of "unfair competition" does not have boundless application as a remedy for unfair trade practices" (*Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 2 Cir., 499 F.2d 232, 237). Rather, it goes on, the primary concern in unfair competition is the protection of a business from another's misappropriation of the business "organization (or its) expenditure of labor, skill and money" (*International News Serv. v. Associated Press*, 248 U.S. 215, 239, 39 S.Ct. 68, 72, 63 L.Ed. 211).

(7) We believe that the insurer's position accurately reflects the long-abiding state of the law on the subject. Even the case on which the insured relies for its broad-ranging definition of unfair competition accepts the principle of misappropriation of another's commercial advantage as a cornerstone of the tort (*see Dior v. Milton*, 9 Misc.2d 425, 431, 436, 155 N.Y.S.2d 443, *aff'd*, 2 A.D.2d 878, 156 N.Y.S.2d 996). It follows that the policy's phrase "unfair competition" is not to be equated with the far more amorphous term "commercial unfairness".

No succor, therefore, is to be had by the plaintiff from the fact that an actuarially oriented insurance carrier, in computing premiums for underwriting purposes, will have taken into account the recognized rule requiring that ambiguities be resolved in favor of its insureds. The simple answer, of course, is that there just was nothing ambiguous about "unfair competition" in the present context. To redefine these words at this point is to ignore the importance of stability to the law governing commercial and property relationships (*People v. Hobson*, 39 N.Y.2d 479, 489, 384 N.Y. S.2d 419, 348 N.E.2d 894).

*Cf. Roy Export Co. v. CBS*, 672 F.2d 1095, 1105 (2d Cir.1982) (finding "unfair competition" to be an "adoptable" tort, but holding CBS had "unquestionably appropriated the 'skill, expenditures and labor'" of the plaintiffs for CBS' own commercial advantage).

It may be that if the prospectuses for bonds for Washington Nuclear Power Plants Nos. 4 and 5 are found to be false, and if responsibility for those documents could be attributed to defendants, that claims arguably would be against defendants under Washington's Consumer Protection Act, RCW Chapter 19.86. However, the court is satisfied that the analysis of the New York *Ruder & Finn* case is correct and consistent with Washington's case law. *See, e.g., Seaboard v. Williams N.W. Chrysler*, 81 Wash.2d 740, 504 P.2d 1139 (1973); *Olympia Brewing Co. v. Northwest Etc. Co.*, 178 Wash. 533, 538, 35 P.2d 104 (1934). That is, in the context of these policies, "unfair competition" is a term of art which must be taken as set forth under the narrow but well-settled common law definition. Consequently, the insurers' motions must be and are GRANTED, and defendants Chelan P.U.D.'s and Keisers' motion is DENIED.

The Clerk of the Court accordingly shall enter judgment in favor of plaintiffs Pine Top, Old Republic, Twin City, and intervening plaintiffs, Evanston Insurance Co. and Industrial Underwriters Insurance Cos. *It is declared that none of these plaintiffs has a duty to defend or compensate defendants Chelan P.U.D. or Keiser for any costs arising from the Supply System litigation.* Previously, the court also GRANTED defendant California Union Insurance Co.'s motion for summary judgment. It follows that the Industrial Underwriters' complaint and claims against California Union Insurance Co. are DISMISSED WITH PREJUDICE, and the Clerk similarly shall enter judgment in favor of defendant California Union.

IT IS SO ORDERED.