**GLOBE INDEMNITY COMPANY, a Delaware corporation, Plaintiff,**

v.

**FIRST AMERICAN STATE BANK, et al., Defendants.**

No. C88–1358Z.

United States District Court,
W.D. Washington,
at Seattle.

June 28, 1989.

Mark Thorsrud of Thorsrud, Cane & Paulich, Inc., P.S., Seattle, Wash., and Susan Carbone of Lynch, Loofbourrow, Helmenstine, Gilardi & Grummer, San Francisco, Cal., for plaintiff.

William Rosell of Wm. E. Rosell & Associates, Seattle, Wash., for defendants.

## ORDER GRANTING GLOBE'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION TO DISMISS OR STAY

ZILLY, District Judge.

The Court has reviewed the following-listed motions, and all materials submitted in support of and opposition to them:

1. The motion of plaintiff Globe Indemnity Co. ("Globe") for summary judgment;

2. The defendants' motion to dismiss or stay this action.

On Friday, June 16, 1989, the Court heard oral argument on Globe's motion for summary judgment. Following oral argument, the Court took the motion under advisement and DENIED the defendants' motion to dismiss or stay this action. The Court now finds and rules as follows:

### BACKGROUND

Globe is a California-based insurance company that does business in Washington. Defendant First American Bank ("the Bank") is a banking institution with its principal place of business in Bellevue, Washington. Defendant David Upham was president of the Bank, and defendant Evan Julber was vice president. The Bank was insured under a Business Guard Policy, GYA 277673 ("the Policy"), issued by Globe for the term March 11, 1986 to March 11, 1989, but the Bank cancelled the Policy effective March 11, 1988. Carbone Declaration, Ex. F. The Policy provided general liability coverage, supplemented by a Banker's Business Guard endorsement.

Five civil actions were filed against the Bank and others arising out of an invest-

ment scheme involving the purchase of precious metals. In each of the underlying actions, the plaintiffs (hereafter "claimants") allege that the Bank was involved in a scheme to defraud investors through deceptive practices and misrepresentations. William R. Kennedy, the CEO of Western Monetary Consultants, is alleged to be the ring leader of the scheme. The claimants contend that Kennedy induced the investors to buy precious metals on margin and to finance the remainder of their investments. After the investors had made commitments to purchase, the Bank allegedly influenced the investors by providing them with loan documents bearing the Bank's name. The loans were to have been secured by precious metals stored in the Bank's vaults. The claimants allege that the Bank lent the appearance of financial security to the investments, that the Bank falsely represented that it was FDIC-insured and had specially designed vaults, while it had none, that the metals were never purchased or stored in the Bank's vaults, that the Bank's and Western Monetary's records were in such disarray that it could not be determined which metals or what amount belonged to which customers, and that the investors lost the full value of their investments. The complaints assert that the Bank advertised in Kennedy's periodical, *Conservative Digest*, and that the Bank was fully aware of the role it played in the scheme. The claimants contend that the investment program was in operation from January 1, 1985 through May 31, 1988. The complaints allege violations of the Commodity Exchange Act, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Securities Exchange Act of 1934.

The defendants tendered their defense in the underlying actions to Globe, and Globe accepted the tender of defense subject to a full reservation of its rights to contest coverage. On October 26, 1988, Globe filed this action to obtain a declaration of its rights and duties under the terms of the Policy. Globe now moves for summary judgment, contending that under the Policy, it owes no duty to defend or indemnify the defendants in the underlying actions.

The areas of coverage at issue in this declaratory judgment action involve the comprehensive general liability insurance and the Bankers Business Guard Endorsement to that insurance. The parties agree that Washington law applies to these coverage issues, and the Court so concludes. The Policy provides that the law of the state where the contract was issued governs its terms and the terms of any attached forms, and the Policy was issued in Washington. Carbone Declaration, Ex. F (Business Guard Policy: General Provisions, para. 5).

## DISCUSSION

### I. *Globe's Motion for Summary Judgment*

#### A. *Summary Judgment Standard*

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the question is whether the evidence presented by the defendants, together with permissible inferences drawn from that evidence, is sufficient to establish a "genuine issue as to any material fact." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir.1989). The Court concludes that there are no genuine issues of material fact and Globe is entitled to summary judgment.

#### B. *Advertising Offense*

■ The central issue on Globe's motion is whether the allegations in the underlying actions come within the Policy's coverage for "advertising offenses;" specifically, whether the claims constitute "unfair competition." Advertising offense is defined in the Banker's Business Guard Endorsement to the Policy as:

> injury occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy,

piracy, *unfair competition*, or infringement of copyright, title or slogan.

Carbone Declaration, Ex. F (emphasis added). The underlying actions allege that the Bank and Western Monetary Consultants (of which Kennedy was CEO)

> made false, deceptive and misleading statements of material facts and failed to disclose facts material to the customer's decision to purchase metals on margin with Western Monetary, including but not limited to the misrepresentations and omissions set forth herein.

Carbone Declaration, *Graham* Complaint, para. 65; *Hidalgo* Complaint, para. 66; *Lieberman* Complaint, para. 48; *Buchanan* Complaint, para. 66; *see also Lambourne* Complaint, paras. 35, 49, 76.

In *Pine Top Ins. Co. v. Public Util. Dist. No. 1*, 676 F.Supp. 212 (E.D.Wash.1987), the court ruled on essentially the same issue. *Pine Top* was a declaratory action involving insurance policies that covered defendants Chelan P.U.D. and Robert Keiser, an official of the P.U.D. The policies defined "unfair competition" in the following context: " 'an "advertising liability" shall mean … (3) piracy or *unfair competition* or idea misappropriation under an implied contract; …' " 676 F.Supp. at 215 (emphasis added.) The underlying lawsuits in *Pine Top* alleged that Chelan P.U.D. and Keiser were responsible to bondholders of the Washington Public Power Supply System's Nuclear Power Plant Projects 4 and 5 for misrepresentations and omissions in official statements or prospectuses. 676 F.Supp. at 213. The court first held that Chelan P.U.D. and Keiser were collaterally estopped from relitigating whether the underlying claims were part of "advertising liability," because that question was decided against them in the earlier state court action before Judge Cone of the Chelan County Superior Court in Wenatchee, Washington. 676 F.Supp. at 213–15. Next, the court held that, in the context of the insurance policies at issue, "unfair competition" was a term of art to be interpreted under its narrow common law definition, as the tort of passing off one's goods for those of another. The court rejected the insured defendants' proposed definition of

"unfair competition" as "including the more recent 'unfair methods of competition,' that is, the modern consumer protection aura…." 676 F.Supp. at 216. The defendants in the present case urge the Court to rule that there is at least an ambiguity in the Policy regarding coverage under a similar expanded definition of unfair competition.

The defendants attempt to distinguish *Pine Top* on the grounds that the court's conclusions were dictum; that the court's holding was limited to cases involving a duty to indemnify, which is narrower than the duty to defend at issue in this case; that the policies in that case defined advertising offense within a subgroup of torts specifically having to do with misappropriation; that, under Washington law, a more expansive definition of "unfair competition" is appropriate; that Globe's interpretation only creates an ambiguity to be construed in favor of the defendant-insureds; or that, in the alternative, the Court should certify the interpretation of unfair competition in the context of this Policy to the Washington Supreme Court. Though dictum, the *Pine Top* court's reasoning is supported by law and is directly applicable to the Policy at issue in this case. Accordingly, this Court adopts the rationale of *Pine Top* and rejects the defendants' other arguments.

Adopting the common law definition of unfair competition "in the context" of the policies both in *Pine Top* and in this case is supported by *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wash.2d 740, 504 P.2d 1139 (1973), cited in *Pine Top*, 676 F.Supp. at 217. In *Seaboard*, the Washington Supreme Court applied the common law definition of unfair competition and held that the plaintiff-insurer had no duty to defend the Attorney General's suit against an automobile dealer and associates, which sought to *enjoin* alleged " 'unfair methods of competition and unfair or deceptive acts or practices' " and requested penalties under the Washington Consumer Protection Act, among other laws. The policy at issue in *Seaboard* required the insurer to pay on behalf of the

insured all sums that the insured become obligated to pay by reason of liability as the result of a final judgment for *money damages* from " '(c) piracy, plagiarism, or unfair competition or idea misappropriation under implied contract ...' " 81 Wash.2d at 741, 504 P.2d 1139. The court held that, because the Attorney General's suit did not seek *damages for unfair competition,* the dealer was not threatened with a judgment for such damages. There was no contention that the insurer undertook to defend against an *injunction* action based on the causes of action in the policy. 81 Wash.2d at 746–47, 504 P.2d 1139.

The court stated that an action for unfair competition under the common law

> was available to one whose names, symbols, or devices had been appropriated and used by a competitor, or who had suffered damages by reason of a substitution of goods or wares so as to produce a false impression in the mind of the buying public.

81 Wash.2d at 742–43, 504 P.2d 1139; *see also Pine Top,* 676 F.Supp. at 216; *Ruder & Finn, Inc. v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981). In the context of Globe's policy, the same common law meaning applies, and it does not cover the alleged misrepresentations or omissions in the course of the Bank's advertising, as the claimants contend in the underlying lawsuits. The listing of torts covered under "advertising offense" in the Policy at issue here, as compared to the grouping in the Policy in *Pine Top* or *Seaboard,* is a distinction without a difference.

Thus, the Court concludes that the policy is not ambiguous; there is no need to certify the issue to the Washington Supreme Court; and, in the context of Globe's policy, the definition of unfair competition should not be expanded to include offenses, such as those at issue in the underlying actions, that are within the "consumer protection aura" of unfair methods of competition.

The Bank also argues that the insurance industry has, by its 1986 revision to standard comprehensive general liability insurance forms eliminating "unfair competition" from the definition of advertising injury, indicated its intention that unfair competition included activities such as those alleged in the underlying complaints. The Court concludes that the *FC & S Bulletin* on "Personal and Advertising Injury Liability," Public Liability Ab–1—Ab–3 (July 1985) and the 1985 Hartford Fire Insurance Company miscellaneous property coverage form submitted by the Bank in support of this argument do not illuminate or create an ambiguity in the terms of the Policy at issue here.

C. *Contractual Liability Coverage*

■ The defendants contend that Globe's duty to defend arises under two exceptions to the exclusions for property damage for most contracts: the exception for liability under an "incidental contract" and the exception for liability under a warranty of fitness or quality of the Bank's product or a warranty that work done by the Bank would be performed in a workmanlike manner. The contractual liability exceptions do not raise an issue of fact as to whether Globe must defend on this ground. First, the damages allegedly following from property damage are not the result of an "occurrence," which is defined as an "accident ... neither expected nor intended" by the insured. A deliberate, intentional act with foreseeable results is not such an occurrence. *See Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group,* 37 Wash. App. 621, 681 P.2d 875 (1984). The Court concludes that, contrary to the defendant's contention, the allegation that the Bank's records were in disarray, which is part of the claim of a scheme to defraud the investors, does not establish an "occurrence" for purposes of triggering a duty to defend. Second, the Globe Policy covers indemnity contracts, which refers to tort, not contractual liabilities. *See Harrison Plumbing,* 37 Wash. App. at 626, 681 P.2d 875. Third, the underlying complaints allege economic loss, but this is not "property damage" that would trigger the exceptions. Economic loss resulting from injury or damage to intangible property, such as loss of invest-

ment, is not property damage. *See Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 14 Wash.App. 557, 544 P.2d 763 (1975), *review denied*, 86 Wash.2d 1011 (1976); *Gulf Ins. Co. v. L.A. Effects Group, Inc.*, 827 F.2d 574, 577 (9th Cir.1987) (construing California law). The Court does not read the complaints to allege "loss of use of precious metals in part through the claimed negligence of" the Bank, as the defendants suggest.

### D. *Truth in Lending Coverage*

The insurer has the discretion to defend Truth in Lending coverage claims; it is not required to do so. Carbone Declaration, Ex. F (Bankers Business Guard Endorsement, section X). As a result of this discretion on the part of the insurer, the Court concludes that there are no genuine issues of material fact with regard to Globe's duty to defend such claims in the underlying actions.

### E. *Defendants' Request for Further Discovery on Coverage*

The defendants represent that the claimants in the underlying cases intend to file amended complaints and contend, therefore, that they need additional time to obtain discovery before this summary judgment motion may be decided. The summary judgment motion can be decided on the basis of whether the complaints presently filed require Globe to defend. Globe's duty to defend is triggered by any complaint alleging facts that, if proved, would render the insurer liable. *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wash.2d 191, 197, 743 P.2d 1244 (1987); *State Farm Gen. Ins. Co. v. Emerson*, 102 Wash.2d 477, 486, 687 P.2d 1139 (1984). If alleged claims are clearly not covered by the policy, then the insurer is relieved of its right and duty to defend. *Emerson*, 102 Wash.2d at 486, 687 P.2d 1139.

■ An insurance company is required to look beyond the

> allegations of the complaint if (a) the allegations are in conflict with facts known to or readily ascertainable by the insurer or (b) the allegations of the com-

plaint are ambiguous or inadequate. In the event of ambiguity or inadequacy the insurer must investigate to discover whether there is a potential for liability. *E–Z Loader Boat Trailers, Inc. v. The Travelers Indem. Co.*, 106 Wash.2d 901, 908, 726 P.2d 439 (1986). The Court has concluded that the Policy is unambiguous on the matters presented here. None of the defendants' arguments on the areas of coverage they discuss raises a genuine issue of material fact. The defendants' request for more time for discovery is DENIED.

### II. *Defendants' Motion to Dismiss or Stay*

In *Tank v. State Farm Fire & Cas. Co.*, 105 Wash.2d 381, 391, 715 P.2d 1133 (1986), the Washington Supreme Court recognized "that insurers, when faced with defending under a reservation of rights, are not without alternatives. They may sue for a declaratory judgment before they undertake a defense, to determine their liability...." *See also American States Ins. Co. v. D'Atri*, 375 F.2d 761, 763 (6th Cir.1967); *Sears, Roebuck & Co. v. Zurich Ins. Co.*, 422 F.2d 587, 589 (7th Cir.1970). Where "the critical issue for purposes of coverage will not be decided in the tort action ... the Courts of Appeals have uniformly held that it is an abuse of discretion for a District Court to dismiss declaratory judgment actions brought by insurance carriers." *Allstate Ins. Co. v. Harris*, 445 F.Supp. 847, 851 (N.D.Cal.1978).

The critical issue for purposes of coverage in Globe's declaratory action is whether the allegations in the underlying lawsuits fall within the terms of the Policy for coverage of "advertising offenses," "property damage," "contractual liability" or "Truth in Lending" liability. These matters do not depend on resolution of the factual issues involved in the underlying lawsuits, and the Court has resolved them above as a matter of law. Consequently, the defendants' motion to dismiss or stay is DENIED.

### III. *Conclusion*

For the above reasons, Globe's motion for summary judgment declaring that it has no duty to defend or indemnify under the Policy is GRANTED; and the defendants' motion to dismiss or stay this action is DENIED.

IT IS SO ORDERED.

The Clerk of the Court is directed to prepare judgment to reflect this ruling of the Court.