[No. 50459-8.   En Banc.   September 6, 1984.]

STATE FARM GENERAL INSURANCE COMPANY, *Respondent,* v. GOLDA EMERSON, *Individually and as Personal Representative,* ET AL, *Appellants.*

*Thorner, Almon, Kennedy & Gano, P.S.,* by *Wade E. Gano,* for appellant Emerson.

*Howard E. Bundy* of *Francis, Lopez & Ackerman),* for appellant Cain.

*Reed, McClure, Moceri & Thonn, P.S.,* by *William Robert Hickman,* for respondent.

*Bryan P. Harnetiaux* and *Robert H. Whaley* on behalf of Washington Trial Lawyers Association, amici curiae for appellants.

UTTER, J.—Appellants Golda Emerson and Glen Cain were insureds in a homeowners policy issued by respondent State Farm which excludes liability coverage for bodily injury to any insured. They appeal from a summary judgment declaring the exclusion relieved the respondent from any duty to defend or pay under the policy for injuries to insureds. The trial court found the policy unambiguous and clear, and not violative of public policy. We affirm.

Appellant Emerson is the named insured in a homeowners policy providing property damage coverage for her mobile home, and liability coverage for all insureds. The policy defined insureds as the named insured, and the named insured's spouse and relatives, if residents of the named insured's household. Residing in Emerson's household at that time were her son, Ronny Dale Emerson, and her then husband, appellant Cain.

On September 4, 1978, within the policy term, Cain was injured and Ronny Emerson killed in an accident when the citizens band antenna they were installing atop the mobile home came too close to a power line. In July 1981, Emerson, personally and as personal representative of Ronny Emerson, commenced suit against Cain alleging negligence in Ronny Emerson's death. Cain asserted a counterclaim against Emerson for his own injuries. Both demanded from State Farm a defense and coverage under the terms of the policy. The policy contained a family or household exclusion clause.[1] State Farm filed a declaratory judgment action to establish that the clause excluded coverage. The trial court granted State Farm's motion. Appellants appealed to the Court of Appeals, Division Two. The appeal was certified to this court.

The issues presented to us are (1) whether there were material facts at issue which precluded granting of summary judgment, (2) whether the family exclusion clause in the homeowners policy is void as against public policy, (3) whether the policy was ambiguous or unclear so as to construe coverage in favor of the insureds, and (4) whether State Farm has an independent duty to defend appellant

---

[1]The exclusion clause at issue reads, "This policy does not apply: 1. Under Coverage E—Personal Liability . . . (g) to bodily injury to any insured within the meaning of parts (1) and (2) of definition of insured." Clerk's Papers, at 157. The definition section contains the following language: "(a) 'Insured' means (1) The Named Insured stated in the Declarations of this policy; (2) if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty–one in the care of any Insured . . ." Clerk's Papers, at 159.

Cain. We answer all issues in the negative, and affirm the trial court.

## I
### SUMMARY JUDGMENT

A summary judgment may not be granted if there is a genuine issue of material fact. *Jacobsen v. State,* 89 Wn.2d 104, 569 P.2d 1152 (1977). If no issue of material fact exists, the court may grant summary judgment as a matter of law. *LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975).

■ Appellant Emerson raises as an issue of fact the readability of the policy. She proposed to offer the opinion of a readability expert. Insurance policies are to be construed as contracts, and interpretation is a matter of law. *Kelly v. Aetna Cas. & Sur. Co.,* 100 Wn.2d 401, 408, 670 P.2d 267 (1983). We have said that we will interpret an insurance contract according to the way it would be understood by the average insurance purchaser. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.,* 99 Wn.2d 65, 68, 659 P.2d 509 (1983). The readability of an insurance contract is a determination to be made by a court following this principle. Specialized knowledge of an expert is not relevant to the trier's determination of the average person's understanding of the policy and the opinion of a readability expert, therefore, does not present an issue of material fact. *See* ER 702.

Appellant Cain maintains that an issue of fact was presented under RCW 48.30.300 which prohibits discrimination based on sex or marital status absent bona fide statistical differences. Any question of fact regarding statistical bases for differentiation arises only if the policy discriminated against Cain on the basis of his marital status, as he alleges.

Cain was an insured under the policy definitions by virtue of his being both the spouse of the named insured and by residing in the named insured's household. Likewise, Ronny Emerson was an insured by virtue of being a relative of the named insured and by living in the named insured's household. The definition language confers insured status on family members who are living in the

same household. It does not discriminate on the basis of marital status.

## II
### PUBLIC POLICY

Appellants contend that family exclusion clauses in homeowners insurance are contrary to public policy. In support of their position they largely rely on our recent decision which held that family exclusion clauses in automobile policies are contrary to public policy. *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 643 P.2d 441 (1982), *aff'g on rehearing* 95 Wn.2d 373, 622 P.2d 1234 (1980). It is urged that the voiding of family exclusion clauses in automobile insurance applies with equal force to homeowners insurance.

We have said that limitations in insurance contracts which are contrary to public policy and statute will not be enforced, but otherwise insurers are permitted to limit their contractual liability. *Wiscomb,* at 210; *Trinity Universal Ins. Co. v. Willrich,* 13 Wn.2d 263, 124 P.2d 950, 142 A.L.R. 1 (1942). While questioning the wisdom of certain exclusion clauses, we have been hesitant to invoke public policy to limit or avoid express contract terms absent legislative action. *Progressive Cas. Ins. Co. v. Jester,* 102 Wn.2d 78, 683 P.2d 180 (1984). "In general, a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy." 17 C.J.S. *Contracts* § 211, at 1024 (1963).

In *Wiscomb,* we specifically stated that our starting point for analyzing public policy was with the financial responsibility act, RCW 46.29. *Wiscomb,* at 206. We said, "to the greatest extent possible without requiring mandatory insurance coverage, the Legislature has demonstrated its intended policy of providing adequate compensation to those injured through the negligent use of this state's highways." *Wiscomb,* at 207. In other cases invalidating agreements between insurers and insureds, we have likewise found statutory evidence of a public policy. We relied on

the financial responsibility act for striking down an agreement between the parties in contravention of the act. *LaPoint v. Richards,* 66 Wn.2d 585, 403 P.2d 889 (1965). In *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 335, 494 P.2d 479 (1972), we declined to permit "a myriad of legal niceties arising from exclusionary clauses" to defeat the public policy expressed in the uninsured motorist statute, RCW 48.22.030.

The additional rationales in *Wiscomb* for overriding family exclusion clauses were not independent of the public policy evidenced by the financial responsibility act. Those rationales, in the context of automobile insurance, are readily distinguishable when applied to homeowners insurance. First, although a factor in *Wiscomb,* exclusions which focus on persons not party to the contract or contributing to the risk are not solely determinative of legality. *See, e.g., Progressive Cas. Ins. Co. v. Jester, supra* (bargained-for exclusion of passengers on motorcycles not contrary to public policy). The focus on innocent victims in automobile exclusion clauses is improper because the purpose of the financial responsibility act and uninsured motorist statute is to protect them. *Wiscomb,* at 207; *Touchette,* at 332 (uninsured motorist coverage to protect victims of negligent drivers). Second, *Wiscomb* rejected the insurer's freedom of contract argument in light of the widespread use of such clauses in the state. Here, there has been no showing that policies without the family exclusion are generally unavailable. In addition, inability to obtain homeowners liability coverage for one or any class of persons does not result in noncompliance with statutory requirements as may inability to obtain automobile liability coverage. Finally, *Wiscomb* rejected the insurers' justification of fraud and collusion necessitating such clauses by pointing out that the court had dismissed similar arguments in removing the common law bar to intrafamily tort immunity. *See Freehe v. Freehe,* 81 Wn.2d 183, 500 P.2d 771 (1972). Contrary to appellants' arguments, the family exclusion clause does not reinstate the common law immunity but rather excludes

insurance proceeds as a source of recovery when the insured has purchased a policy with such an exclusion. *Wiscomb's* discussion of intrafamily tort immunity was limited to refuting the insurer's justification rather than a recognition of a separate public policy sufficient to override private contracts.

The use, operation and regulation of automobiles on public highways has been of long–standing concern to the courts and legislatures. In 1916, Justice Cardozo observed that a lower court might have been justified in ruling as a matter of law that "the car was a dangerous thing." *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 394, 111 N.E. 1050, 1055 (1916). This court noted that "The automobile is a useful machine in our society, but it can also be a deadly weapon." *State ex rel. Ralston v. Department of Licenses,* 60 Wn.2d 535, 540, 374 P.2d 571 (1962). There we recognized widespread regulation concerning the automobile. While we are not unmindful that serious and costly accidents occur in the home, and that innocent victims may be left without meaningful compensation in the absence of insurance, we do not perceive the same level of concern for financial compensation by negligent homeowners as exists for negligent automobile owners and users.

Absent prior expression of public policy from either the Legislature or prior court decisions, our inquiry as to whether the family exclusion clause clearly offends the public good must be answered in the negative. "The term 'public policy,' . . . embraces all acts or contracts which tend clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel." (Italics omitted.) *LaPoint,* at 594–95; *Goodier v. Hamilton,* 172 Wash. 60, 19 P.2d 392 (1933) (quoting 6 R.C.L. § 120, p. 712). Such a showing has not been made here. We shall not invoke public policy to override an otherwise proper contract even though its terms may be harsh and its necessity doubtful.

## III
### AMBIGUITY

The appellants ask that the family exclusion clause not be enforced because it is ambiguous. Where a clause in an insurance policy is ambiguous, it will be construed in a manner most favorable to the insured regardless of the insurer's intention. *Morgan v. Prudential Ins. Co.,* 86 Wn.2d 432, 435, 545 P.2d 1193 (1976). In construing the language of an insurance contract, we will examine the contract as a whole, and if, on the face of the contract, two reasonable and fair interpretations are possible, an ambiguity exists. *Morgan,* at 434, 435. Appellants contend that the policy is ambiguous for two reasons: First, the exclusion clause itself is susceptible of two reasonable meanings, and second, the structural complexity of the policy as a whole is such that the clause is obscured and a reasonable person would not realize that the exclusion applied.

Appellant Cain suggests that a reasonable person could read the exclusion as saying merely that the policy does not apply to injuries suffered by an insured through the negligence of a noninsured, *i.e.,* a neighbor. Cain's suggested reading adds words to the clause which are clearly not present. The words "this policy does not apply . . . to bodily injury to any insured" are not qualified. As State Farm suggests, it is hard to imagine how the language could be more clear.

The structural ambiguity complained of arises, appellants argue, because the liability coverage section is on one page (page 6 of the policy), the exclusion section on another (page 7 of the policy), and the definition of insured on yet another page (page 9 of the policy). Clerk's Papers, at 156, 157, 159. The separate sections are individually, boldly captioned. The exclusion clauses are all in capital letters. The definition section is explicitly referenced in the exclusion clause.

The fact that a policy is long, and that pertinent language is not contained on a single page does not, in itself, render the policy structurally ambiguous. This is particu-

larly so when the limiting language is clearly set off as it is here.

We are supported in our reading of the policy by a California court's analysis of an apparently identical clause. *State Farm Fire & Cas. Co. v. Alstadt,* 113 Cal. App. 3d 33, 39, 169 Cal. Rptr. 593 (1980). There the court found the language and placement of the exclusion "conspicuous and plain in their positioning, labeling and capitalization. The exclusion in question is clear and without ambiguity in its language and reference to the appropriate definition."

Appellant Cain invites the court to consider the application of the reasonable expectation doctrine of insurance contracts. The courts adopting this doctrine have varied in their requirements, but the basic approach permits the court to look beyond the four corners of the document to specific, external evidence of ambiguous circumstances which reasonably justified the insured's expectation of coverage. *See* Note, *A Reasonable Approach to the Doctrine of Reasonable Expectations as Applied to Insurance Contracts,* 13 J. L. Reform 603 (1980). Were we to consider such an approach, the facts of this case do not warrant it. Golda Emerson, in her affidavit in support of denial of summary judgment, says that State Farm's agent assured her she had full coverage. She concedes she read the policy prior to the accident. An assurance of full coverage cannot reasonably lead to the expectation of coverage without limit. A casual glance through the pages of the policy should put a reader on notice that some exceptions to coverage were contained in the policy, and that the agent's assurances are qualified. Particularly in the absence of ambiguity, there is no reasonable expectation that no exemptions to coverage exist.

## IV
### DUTY TO DEFEND

Appellant Cain additionally argues that State Farm has a duty to defend the negligence claim against him regardless of its duty to pay on that claim. Cain cites the liability

coverage language which states that the insurer has a duty "to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent". Clerk's Papers, at 156. The term "such bodily injury" is qualified in the preceding sentence with the words, "to which this insurance applies." The policy provides a defense, irrespective of the merits of the claim, but only if coverage would apply.

The general rule is that insurers who have reserved the right and duty to defend are obliged to defend any suit which alleges facts wherein, if proven, would render the insurer liable. *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wn.2d 740, 504 P.2d 1139 (1973). However, alleged claims which are clearly not covered by the policy relieve the insurer of its right and duty to defend. *Waite v. Aetna Cas. & Sur. Co.*, 77 Wn.2d 850, 858, 467 P.2d 847 (1970). *R.A. Hanson Co. v. Aetna Ins. Co.*, 26 Wn. App. 290, 612 P.2d 456 (1980), cited by appellant Cain but contrary to his position, is in accord with the principle that an insurer is obliged to defend only allegations on the face of the pleading which give rise to a covered event. Thus, the duty to defend hinges not on the insured's potential liability to the claimant, but rather on whether the complaint contains any factual allegations rendering the insurer liable to the insured under the policy.

As we have held that State Farm excluded coverage for bodily injury to insureds, and the complaint alleges bodily injury to an insured, State Farm has no duty to defend appellant Cain on this allegation.

## CONCLUSION

In conclusion, we find that there were no material issues of fact precluding summary judgment. We decline to extend *Wiscomb* beyond the context of automobile insurance and, therefore, do not hold that the family exclusion clause in homeowners insurance is violative of public policy. Under the rules of construction of insurance contracts, we find

that the exclusionary language at issue is clear and unambiguous. Finally, we hold that when coverage is clearly inapplicable to the facts alleged in the complaint, the insurer has no duty to defend.

The decision of the trial court is affirmed.

WILLIAMS, C.J., ROSELLINI, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DORE, J., concurs in the result.