[No. 24474-4-I. Division One. July 23, 1990.]

SNOHOMISH COUNTY PHYSICIANS CORPORATION, *Appellant,* v. ROBERT JUNGARO, ET AL, *Respondents.*

*Robert B. Willoughby* and *Anderson, Hunter, Dewell, Baker & Collins, P.S.,* for appellant.

*James L. Maynard* and *Alexis Boris,* for respondents.

COLEMAN, C.J.—Snohomish County Physicians Corporation (SCPC) successfully sought recovery at trial of the amount which it had paid for medical expenses to its insured, Robert Jungaro. The group health care contract at issue excluded coverage for expenses incurred for any injury to the extent benefits are available under the terms of any underinsured motorist insurance issued to any patient under the contract. The trial court upheld the exclusion provision of the contract, holding that it did not violate public policy. SCPC appeals from that portion of the trial court's holding that as a matter of public policy, SCPC should have to pay a portion of the costs and attorney fees which Jungaro incurred in pursuing underinsured motorist benefits from Grange Insurance Company. The Jungaros cross–appeal, claiming that (1) the exclusion provision violates public policy and therefore is unenforceable, and (2)

even if the exclusion provision is enforceable, the trial court erred in its calculation of the amount that SCPC should contribute toward the costs and attorney fees which they incurred in pursuing underinsured motorist benefits. We affirm in part and reverse in part.

On July 28, 1985, Robert Jungaro sustained injuries as the result of an automobile accident caused by Gary Wortham. At that time, Jungaro had group health care coverage through SCPC.[1] He also had underinsured motorist coverage through Grange Insurance Company. SCPC paid Jungaro $21,736.08 through November 1986 for medical bills he incurred as a result of the accident. In January 1986, Jungaro settled his third party claim against Wortham for $60,000, Wortham's liability insurance policy limit.

On October 15, 1986, Grange informed SCPC of the underinsured motorist coverage contained in Jungaro's policy and that Jungaro could make application for those benefits. However, Grange subsequently refused to make those benefits available to Jungaro. In May 1987, Jungaro ultimately received an arbitration award against Grange in which the total value of Jungaro's claim, including medical bills incurred was determined to be $170,588.23. Upon learning of the arbitration award, SCPC sought reimbursement from Jungaro of the amount it had paid for his medical expenses. SCPC based its claim upon the exclusion provision in the group health care contract under which Jungaro was covered. The exclusion provision provided in relevant part that

> [c]overage will be excluded for expenses incurred or services rendered . . . for . . .
>
> . . . .
>
> b. Any . . . condition or injury to the extent benefits are available under the terms of any . . . underinsured motorist insurance when such . . . insurance is issued to . . . any patient under this contract.

Jungaro refused to reimburse SCPC.

---

[1] SCPC is a nonprofit group health care contractor whose purpose is to provide quality health care to its subscribers at the lowest rates reasonably possible.

On October 3, 1988, SCPC brought an action against Robert and Jane Doe Jungaro seeking to recover the amount it had paid for medical expenses. After a bench trial, the court concluded that the exclusion provision was not against public policy and therefore it was enforceable. The court concluded that SCPC did not become a volunteer when it paid Jungaro's medical bills because at the time of payment, it was unknown whether his underinsured carrier would make underinsured benefits available to him. The court further concluded that because SCPC did not make it clear to Jungaro that if underinsured motorist benefits became available to him he would have to reimburse what SCPC had paid, it would be against public policy to require Jungaro to reimburse SCPC in full. Therefore, the trial court held that SCPC should pay a portion of the costs and expenses which Jungaro incurred in pursuing underinsured motorist benefits. This appeal followed.

We first consider whether the trial court erred by holding that the provision in SCPC's group health care contract, which excludes coverage to the extent that benefits are available to the patient under the terms of any underinsured motorist insurance coverage, did not violate public policy and was therefore enforceable.

■ The general rule is that a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals, contravenes no principle of public policy. *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 481, 687 P.2d 1139 (1984); 17 C.J.S. *Contracts* § 211, at 1024 (1963). "[L]imitations in insurance contracts which are contrary to public policy and statute will not be enforced, but otherwise insurers are permitted to limit their contractual liability." *Emerson,* at 481. Our Supreme Court has been hesitant to invoke public policy to limit or avoid express contract terms absent legislative action. *Emerson,* at 481.

■ The Jungaros contend that the exclusion provision in SCPC's group health care contract violates public policy.

However, the exclusion provision is not prohibited by statute, and the cases the Jungaros rely on do not support their position.

*Mutual of Enumclaw Ins. Co. v. Wiscomb,* 95 Wn.2d 373, 622 P.2d 1234 (1980), *adhered to on reconsideration,* 97 Wn.2d 203, 643 P.2d 441 (1982) dealt with a family exclusion clause in an automobile liability insurance policy. The court struck down the clause on the grounds that petitioner had not demonstrated the efficacy of the reasons supporting family exclusion clauses and because such clauses may make it impossible for many drivers to demonstrate financial responsibility in accordance with the financial responsibility statute. *Wiscomb,* at 381–82. The exclusion clause at issue here is not a family exclusion clause in the Jungaros' automobile liability insurance policy, and it in no way interferes with their ability to demonstrate financial responsibility.

*Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 707 P.2d 125 (1985) involved an uninsured/underinsured motorist endorsement in an automobile policy which provided that the amount payable thereunder would be reduced by "[a]ll sums paid or payable under any workers' compensation, disability benefits or similar law[.]" *Britton,* at 520. The *Britton* court held that disability benefits setoff clauses in underinsured motorist endorsements which restrict the coverage mandated by the underinsured motorist statute are against public policy and void. *Britton,* at 531. The exclusion clause at issue here is not a disability setoff clause in the Jungaros' underinsured motorist endorsement and in no way interferes with their uninsured or underinsured motorist coverage.

In the instant case there is no act which specifically prohibits the exclusion clause in SCPC's group health insurance contract. In fact, this court in *Milliron v. United Benefit Life Ins. Co.,* 18 Wn. App. 68, 566 P.2d 582 (1977) upheld a clause in a group medical policy which excluded coverage for injuries suffered by the insured if he received or was entitled to receive workers' compensation benefits

for that injury. The court reasoned that the purpose of the clause was to provide payment for medical expenses where the workman was not covered under workers' compensation, thereby avoiding overlapping insurance coverage and double recovery. *Milliron,* at 72.

In support of its position that the exclusion provision does not violate public policy, SCPC relies upon *Greer v. Northwestern Nat'l Ins. Co.,* 36 Wn. App. 330, 674 P.2d 1257 (1984), and cases outside our jurisdiction which have upheld similar exclusion provisions.

*Greer* involved the validity of a guest exclusion clause in the liability portion of a motorcycle insurance policy. The *Greer* court upheld the exclusion clause, holding that it was clearly established that Greer had bargained for the coverage he received and expressly rejected passenger coverage. *Greer,* at 341. The court relied upon a basic proposition of insurance law which provides that unless there is some statutory provision to the contrary, an insurance company has the right to limit its liability and to impose restrictions and conditions upon its contractual obligation not inconsistent with public policy.

> [I]f insurance companies must cover risks for which they have not been compensated by the payment of premiums, the insurance company either fails or the difference must be made up by the imposition of increased premiums on all others insured by the company. The right to contract between an insured and an insurer must be upheld if underwriters and actuaries are to have any basis on which to proceed.

*Greer,* at 342. *See* 1 G. Couch, *Insurance* § 15:47 (2d ed. 1959); 12 G. Couch, *Insurance* §§ 45:553, :534 (2d ed. 1981).

In *Medical–Dental Serv., Inc. v. Boroo,* 92 Idaho 328, 442 P.2d 738 (1968), the court upheld an exclusion provision similar to the one here. In that case, Arthur and Fannie Boroo were injured in a collision with an uninsured motorist. At the time of the collision, they had separate policies of health insurance with North Idaho District Medical Service Bureau. The policies excluded benefits if a subscriber was entitled to benefits under any other insurance agreement including automobile insurance. *Boroo,* at 739.

The Boroos ultimately recovered benefits from their own uninsured motorist coverage. When they attempted to recover medical expenses which they incurred as a result of the accident from NIDMSA, their claim was denied based upon the exclusion provision. *Boroo,* at 739. The *Boroo* court upheld the exclusion provision holding that it was not contrary to public policy. *Boroo,* at 741.

Finally, in *Myers v. Kitsap Physicians Serv.,* 78 Wn.2d 286, 292, 474 P.2d 109, 66 A.L.R.3d 1196 (1970), the court held that under the terms of RCW 48.44.020, the Insurance Commissioner of the state is "authorized to disapprove any health care service contract which is deceptive, misleading, unreasonable or unduly restrictive." Here, the Insurance Commissioner has reviewed and approved SCPC's contract, including the exclusion provision. Thus, it is apparent that the Commissioner has determined that SCPC's contract, including the exclusion provision at issue here, is not unreasonable or otherwise contrary to public policy.

Although not directly on point, the above cases are analogous and provide support for SCPC's argument that the exclusion provision in the instant case is not against public policy.

The Jungaros further contend, relying upon *Aetna Life Ins. Co. v. Nix,* 85 N.M. 415, 512 P.2d 1251 (1973), that in order for restitution to be permitted, SCPC had to bring action against Providence Hospital. This argument is without merit. Under *Nix,* in order to claim restitution, SCPC must demonstrate that Jungaro received money which belongs to it. *Nix,* 512 P.2d at 1253. By virtue of the arbitration award, SCPC has made such a showing here.

We next consider whether the trial court erred by holding that SCPC would have to participate in the costs and attorney fees the Jungaros incurred in pursuing underinsured motorist benefits.

SCPC, relying upon *Lynch v. Deaconess Med. Ctr.,* 113 Wn.2d 162, 776 P.2d 681 (1989), contends that the trial court erred by holding that it would have to participate in

the costs and attorney fees the Jungaros incurred in pursuing underinsured motorist benefits from Grange Insurance Company. The issue presented in *Lynch* was whether an attorney was entitled to compensation from one other than his client when services rendered to his client incidentally benefited another. The facts were that Aree Tenney hired Lynch to pursue a claim against Medical Service Corporation (MSC) for failing to pay medical expenses which she had incurred at Deaconess Hospital. MSC eventually reversed its position and provided coverage for Tenney's medical expenses.

Lynch subsequently brought an action to recover attorney fees from Deaconess, arguing that Deaconess benefited from his services to Tenney. The trial court granted summary judgment in favor of Deaconess. *Lynch,* at 163–64.

On appeal, the court affirmed the trial court, holding that Lynch was not entitled to recover attorney fees from Deaconess under either unjust enrichment or equitable subrogation theories. The court reasoned that the mere fact that Deaconess benefited from Lynch was not sufficient to require Deaconess to make restitution. "It is well established that unjust enrichment and liability only occur where money or property has been placed in a party's possession such that in equity and good conscience the party should not retain it." *Lynch,* at 166. The court noted that it would not be unjust enrichment for Deaconess to retain the money since it simply reflected the amount owed by Tenney. Therefore, it could not be said that Deaconess should not, in equity and good conscience, retain funds provided to it. *Lynch,* at 166.

The court further found that the fact that Deaconess eventually recovered this amount is only an incidental benefit derived from Lynch's services to his client. Lynch was obligated to pursue his claim diligently on behalf of his client. Therefore, the court concluded that the receipt of an incidental benefit by Deaconess did not create an implied contract between the parties, nor did it impose the obligation of restitution upon the recipient. *Lynch,* at 166.

The court also held that the principle of equitable subrogation was inapplicable because none of the parties had a subrogated interest. The court reasoned that the account represented a debt owed by Tenney, and that the relationship between Tenney and Deaconess was properly characterized as a debtor–creditor relationship. The court refused to expand the doctrine of equitable subrogation to debtor–creditor relationships. *Lynch,* at 166–67.

■ Although not directly on point, *Lynch* is analogous. Here, SCPC was not unjustly enriched. Once the Jungaros received underinsured motorist benefits from Grange, they were not entitled to medical benefits from SCPC. Therefore, they owed SCPC a refund. At that point they in effect became debtors to SCPC. Therefore, as in *Lynch,* the doctrine of equitable subrogation is inapplicable.

We find persuasive SCPC's argument that if this court were to uphold the trial court, health care contractors will simply withhold payment of medical expenses until it can be determined whether the uninsured/underinsured motorist exclusion applies. We decline to encourage such a policy.

The trial court's holding that the underinsured motorist exclusion in SCPC's health care contract is enforceable is affirmed. The trial court's requirement that SCPC participate in the underinsured motorist arbitration costs and expenses incurred by the Jungaros is reversed.

SCHOLFIELD and FORREST, JJ., concur.