[Nos. 27524-1-I; 27946-7-I.    Division One.    January 21, 1992.]

LOUANN BROWN, *Individually and as Guardian, Appellant,* v. SNOHOMISH COUNTY PHYSICIANS CORPORATION, *Respondent.*
DEBORAH HOGSETT, *Appellant,* v. SNOHOMISH COUNTY PHYSICIANS CORPORATION, *Respondent.*

*Robert O. Dire,* for appellant Brown.

*Maria S. Diamond* and *Levinson, Friedman, Vhugen, Duggan & Bland,* for appellant Hogsett.

*Robert B. Willoughby* and *Law Office of Anderson Hunter,* for respondent.

SCHOLFIELD, J. — In these consolidated cases, Louann Brown, individually and as guardian for Ray Brown, and Deborah Hogsett appeal the trial court's denial of each of their motions for summary judgment and the entry of judgments in favor of Snohomish County Physicians Corporation. We affirm.

FACTS

A. Brown v. SCPC.

On August 21, 1988, Ray Brown was injured when the bicycle he was riding was struck by an automobile driven by Michelle Rutledge. Ray Brown sustained severe head and bodily injuries and was rendered incompetent. As a result of the accident, Ray Brown incurred hospital and medical expenses in excess of $160,000. In addition, Ray Brown experienced lost wages and pain and suffering as a result of the accident. Louann Brown's (hereinafter Brown) memorandum submitted in support of summary judgment indicated that the reasonable value of Ray Brown's total damages was in excess of $1 million.

Both Ray Brown and Michelle Rutledge were insured by PEMCO. Rutledge had liability coverage in the amount of $25,000, and $10,000 no-fault personal injury coverage. Ray Brown's policy provided $50,000 underinsured motorist (UIM) coverage, and $10,000 no-fault personal injury coverage. PEMCO paid these policy limits in full settlement of its obligation under third party coverage and UIM coverage.

In addition to the PEMCO coverage, Ray Brown also had a health care service contract with Snohomish County Physicians Corporation (hereinafter SCPC)[1] through his employer, Ford Co., Inc. The contract provided medical, surgical, hospital and other services to its subscribers. An exclusion in the policy stated as follows:

> Coverage will be excluded for expenses incurred or services rendered, including complications thereof, for the following:
>
> . . . .
>
> b. Any illness, condition or injury to the extent benefits are available to the patient under the terms of any automobile medical, automobile "no fault," or similar contract or insurance, or are available under the terms of any uninsured motorist or underinsured motorist insurance coverage, or homeowner's medical coverage.

The subrogation provision reads as follows:

> a. SCPC's RIGHT TO RECOVER PAYMENTS. The benefits of this contract will be available to a patient who is injured by another party. If SCPC provides benefits under this contract for the treatment of the injury, it shall (a) be subrogated to the rights of the patient (or the patient's representative), (b) have the right to collect damages from the other party and (c) have a security interest in any damages recovered from the other party; the foregoing is to the extent of all payments made by SCPC for those benefits subject to the limitations specified in paragraph 'b.' below. . . .
>
> b. COLLECTION BY PATIENT OR REPRESENTATIVE. If a settlement is made or a judgment is recovered that is equal to or greater than the amount of the other party's reachable assets, SCPC's subrogation right shall be limited to the excess of the amount necessary to fully compensate the patient. . . . If the patient receives a settlement or judgment for less than the other party's reachable assets, the patient shall be considered

---

[1]SCPC is a nonprofit group health care contractor.

as having been fully compensated and SCPC shall be reimbursed from the recovery for the cost of benefits provided. When reasonable legal expenses and collection costs have been incurred in recovering sums that benefit both the patient and SCPC, they shall be equitably apportioned between the patient and SCPC.

After learning of Ray Brown's applicable insurance coverage, SCPC sent a letter to his attorney, indicating that under the exclusion in its policy, a total of $70,000 would be withheld from its payment of the hospital bill. This represented, according to the letter, the $50,000 in UIM coverage and the $20,000 ($10,000 from each policy) of personal injury protection (PIP). The letter further indicated that SCPC would resume payment of medical expenses above that amount, according to its schedule of benefits.

Brown filed a declaratory judgment action against SCPC, asking the court to declare that the policy exclusion

is invalid and unenforceable as against public policy to the extent that it operates to prevent an insured from being made whole, but is valid to [the] extent it operates only to prevent a double recovery by an insured.

Brown moved for summary judgment, and SCPC cross-moved for summary judgment. The trial court, finding no issues of material fact, granted SCPC's motion.

B. Hogsett v. SCPC.

Deborah Hogsett's husband, Ross Hogsett, was fatally injured in an automobile collision on November 13, 1989. A vehicle driven by Catherine Schwartz went out of control and crossed the center line, striking Hogsett's vehicle head on. Schwartz was the driver at fault, but she was uninsured.

The Hogsetts had PIP coverage through Viking Insurance in the amount of $10,000. Viking paid the $10,000 policy limit to cover the first $10,000 in medical expenses incurred by Ross Hogsett before he died. The Hogsetts also had uninsured motorist (UM) coverage in the amount of $25,000 through Viking. The total amount of medical expenses was $34,277.13.

Ross Hogsett's employer, Delta Rehabilitation Life, had a contract with SCPC for health care coverage. Hogsett submitted the remaining $24,277.13 in medical expenses to SCPC. SCPC refused to pay any of these outstanding medical expenses because the total amount of the medical expenses did not exceed the combined total of the PIP coverage and the UM coverage available to Hogsett.

The exclusion contained in the policy that Ross Hogsett's employer had with SCPC was substantially similar to that contained in Ford Co., Inc.'s policy, and read as follows:

> Coverage will be excluded for expenses incurred or services rendered, including complications thereof, for the following:
>
> . . . .
>
> b. Any . . . injury to the extent benefits are available to the patient under the terms of any vehicle insurance policy pursuant to: (1) medical coverage, medical "no fault" coverage, Personal Injury Protection coverage, or similar medical coverage contained in said policy; and/or (2) uninsured motorist or underinsured motorist coverage contained in said policy. . . . For the purpose of this exclusion, benefits shall be deemed to be "available" to the patient if the patient is a named insured, comes within the policy definition of insured, or is a third-party donee beneficiary under the terms of the policy.

Because Viking had not yet tendered the UM policy limit amount of $25,000, Hogsett asked SCPC to pay the outstanding medical bills. She executed SCPC's required "Assignment Agreement", which read as follows:

> I agree to reimburse SCPC for the amount they have paid when settlement or other payment is received from defendant Catherine Schwartz or defendant's insurance carrier or carriers, or other representatives to the extent that I have been fully compensated under the principles of *Thiringer v. American Motors Insurance Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978).
>
> . . . .
>
> Where, under my policy with SCPC, there is an exclusion for benefits available to me because personal injury protection, uninsured motorist, or under insured motorist coverage is available to me, should I discover that I am entitled to receive any of said benefits as a result of injuries sustained in the above-referenced accident, I hereby agree to assign said benefits to SCPC to the extent necessary to reimburse SCPC

in full for the amounts they have paid to me or on my behalf as a result of the above-referenced accident.

Hogsett's counsel advised SCPC of Hogsett's position that the exclusion for UM/UIM coverage was unenforceable, but that she would be willing to place the UM proceeds in an interest-bearing trust account until the issue was resolved. SCPC refused to pay the outstanding medical bills unless Hogsett would concede that the exclusion was valid and enforceable.

Hogsett filed this action for a declaratory judgment that the UM/UIM exclusion is invalid and for injunctive relief and damages. The trial court entered an order on February 11, 1991, denying Hogsett's motion for partial summary judgment. On April 5, 1991, the case was certified for immediate appeal under CR 54(b). To expedite appellate review, Hogsett's other claims were dismissed without prejudice.

## AMBIGUITY OF POLICY EXCLUSION

Brown and Hogsett argue that the policy language at issue is ambiguous and subject to interpretation. They further contend that the purpose of the policy exclusion is to prevent double recovery, and should not apply in either case because full compensation has not been received for the victims' injuries. An ambiguous insurance policy provision, that is, a provision that is fairly susceptible to more than one reasonable interpretation, must be construed in favor of the insured, even though the insurer may have intended a different interpretation. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 545 P.2d 1193 (1976). Exclusions from coverage are contrary to the fundamental protective purpose of insurance, and will not be extended beyond their clear and unequivocal meaning. *McDonald Indus. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 915, 631 P.2d 947 (1981).

Both policies exclude coverage to the extent benefits are available under any automobile medical, medical "no fault", or UIM coverage. The SCPC policy applying to Brown does not define "available". The Hogsett policy provides that

benefits are "deemed to be 'available' to the patient if the patient is a named insured, comes within the policy definition of insured, or is a third party donee beneficiary under the terms of the policy."

■ *Drollinger v. Safeco Ins. Co. of Am.,* 59 Wn. App. 383, 387, 797 P.2d 540 (1990), *review denied,* 116 Wn.2d 1003 (1991), in addressing the meaning of the phrase "available for the regular use" of the named insured, accepted a dictionary definition of " 'capable of use . . . that is accessible or may be obtained' ".

That the proceeds of the applicable PEMCO coverage are available to Brown is indisputable. The proceeds have, in fact, been paid to Brown in the amount of $70,000. The position taken by SCPC that it will pay only the medical costs in excess of the $70,000 paid by PEMCO is consistent with its insurance contract. There is no ambiguity in respect to the term "available" under the circumstances of Brown's case.

The definition of "available" set forth in the policy providing coverage to Hogsett is clear and unambiguous. The coverage is available if Hogsett can make her claim against the other insurance policy as a named insured, an additional insured, or a third party beneficiary.

The Hogsetts were named insureds in the policy they purchased from Viking Insurance. The definition of "available" in the applicable SCPC policy is not capable of two or more reasonable interpretations on the issue of whether the Viking UM coverage is available to Hogsett. The medical and UM coverage available to Hogsett under their coverage with Viking is $35,000. Hogsett's total medical expenses were $34,277.13. Under a clear policy exclusion, all of the medical expenses were excluded and SCPC was, therefore, legally justified in refusing to make any payments unless Hogsett was willing to assign her rights to the PIP and UM coverage to SCPC.

PUBLIC POLICY

██ ██ Brown and Hogsett argue that the exclusions are unenforceable as against public policy. As a private contractor, an insurer is permitted to limit its liability, unless such limitation is inconsistent with public policy or some statutory provision. *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 643 P.2d 441 (1982). In *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 687 P.2d 1139 (1984), the court addressed a claim that an exclusion in a homeowners policy was void as against public policy. At page 483, the court stated:

> Absent prior expression of public policy from either the Legislature or prior court decisions, our inquiry as to whether the family exclusion clause clearly offends the public good must be answered in the negative. "The term 'public policy,' . . . embraces all acts or contracts which tend clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel." . . . Such a showing has not been made here. We shall not invoke public policy to override an otherwise proper contract even though its terms may be harsh and its necessity doubtful.

(Citations omitted.)

██ Neither Brown nor Hogsett cites any Washington decisions that have condemned the type of exclusion at issue here. In *Snohomish Cy. Physicians Corp. v. Jungaro*, 58 Wn. App. 579, 794 P.2d 76 (1990), this court addressed the validity of an exclusion in the SCPC contract which, so far as the public policy issue is concerned, cannot be distinguished from the exclusions involved in these consolidated cases. In *Jungaro*, this court rejected arguments based upon *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 95 Wn.2d 373, 622 P.2d 1234 (1980), *adhered to on reconsideration*, 97 Wn.2d 203, 643 P.2d 441 (1982) and *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 707 P.2d 125 (1985), and held that the exception did not offend public policy and was valid

and enforceable. We adhere to the reasoning employed and the result reached in *Jungaro*.

The appellants argue from *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978) that an insurer cannot rely upon an exclusion if enforcement of the exclusion results in the insured being undercompensated for his special and general damages. Both claim they have not been fully compensated. *Thiringer* is not on point.

*Thiringer* involved an insured's right to recover general damages from a tortfeasor. The issue was whether Thiringer's insurer could successfully avoid liability to Thiringer under its PIP coverage because of its right of subrogation against any recovery from the tortfeasor. The cases before us do not deal with subrogation, which is a distinct equitable doctrine with its own characteristics. The narrow issue here is the extent of coverage provided by SCPC. In *Thiringer*, the insured had purchased the PIP coverage. The coverage was conceded. Here, the issue is whether coverage exists.

The *Thiringer* court emphasized that Thiringer had paid a premium for the PIP coverage American Motors refused to pay. Referring to the American Motors policy, the court said at page 220:

> It does not provide that, if the insured recovers less than his total damages from such party, the amount recovered shall be allocated first to those losses covered by the PIP endorsement and then to other damages suffered by the insured. Such a provision, were it included, would be obviously unfair, since the insured pays a premium for the PIP coverage and has a right to expect that the payments promised under this coverage will be available to him if the amount he is able to recover from other sources, after diligent effort, is less than his general damages.

In the cases before us, the premiums received by SCPC for the medical coverage are calculated based upon the underwriting impact of the exclusion. In each case, the subscriber has not paid a premium for coverage made unavailable by the exclusion. The lesson of *Thiringer* is that if you pay for coverage, you get it. Should the court invali-

date the exclusion, the result would be an extension of benefits to an SCPC insured beyond those benefits paid for by the subscriber. This would amount to a ruling that if you do not pay for the coverage, you get it anyway. This would impose the same unjust result on SCPC which the court rejected in *Thiringer*. *Thiringer* does not support the appellants' public policy arguments in these cases.

INSURANCE COMMISSIONER APPROVAL

In *Snohomish Cy. Physicians Corp. v. Jungaro, supra,* the court stated that under RCW 48.44.020, the Insurance Commissioner is authorized to disapprove any health care contract that is deceptive, and that the Insurance Commissioner reviewed and approved SCPC's policy. RCW 48.44-.020 states in pertinent part:

> (2) The commissioner may on examination, subject to the right of the health care service contractor to demand and receive a hearing under chapters 48.04 and 34.05 RCW, disapprove any contract form for any of the following grounds:
> (a) If it contains or incorporates by reference any inconsistent, ambiguous or misleading clauses, or exceptions and conditions which unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the contract; . . ..

Brown contends that, despite the statement to the contrary in *Jungaro*, the Insurance Commissioner has not approved the SCPC contract. Rather, Brown emphasizes that RCW 48.44.070 merely requires that health care contracts must be filed with the Commissioner.[2]

It does appear that the Insurance Commissioner has not *disapproved* the SCPC contract. In any event, the Insurance Commissioner's approval or disapproval, mentioned in passing in the *Jungaro* opinion, did no more than bolster the finding that the exclusion did not violate public policy. Similarly, here the issue of whether the exclusion is valid and enforceable would be seriously impacted only by a finding

---

[2]RCW 48.44.070 reads as follows: "Forms of contracts between health care service contractors and participants shall be filed with the insurance commissioner prior to use."

that the Insurance Commissioner had disapproved the language. Neither Brown nor Hogsett so contend.

In both cases, the judgment of the trial court is affirmed.

WEBSTER, A.C.J., and FORREST, J., concur.

Review granted at 119 Wn.2d 1002 (1992).