[No. 59018-4.    En Banc.    February 11, 1993.]

LOUANN BROWN, *Individually and as Guardian, Petitioner,*
v. SNOHOMISH COUNTY PHYSICIANS CORPORATION,
*Respondent.*

DEBORAH HOGSETT, *Petitioner,* v. SNOHOMISH COUNTY
PHYSICIANS CORPORATION, *Respondent.*

748

*Oz Dire,* for petitioner Brown.

*Maria S. Diamond* and *Levinson, Friedman, Vhugen, Duggan & Bland,* for petitioner Hogsett.

*Robert B. Willoughby* and *Anderson Hunter Law Firm,* for respondent.

*Bryan P. Harnetiaux, Gary N. Bloom*, and *Robert K. Dawson* on behalf of Washington State Trial Lawyers Association, amicus curiae for petitioners.

*William C. Smart* and *Leonard B. Barson* on behalf of Health Care Contractors Amicus Group, amicus curiae for respondent.

BRACHTENBACH, J. — At issue in these consolidated cases is whether public policy is violated by health care service contract provisions which exclude coverage to the extent that benefits are available to the patient through underinsured motorist (UIM) coverage. The Court of Appeals upheld the contract provisions. We reverse.

The facts of each case follow.

BROWN

On August 21, 1988, Ray Brown was riding a bicycle and suffered serious injuries when he was struck by an automobile. He incurred resulting medical expenses in excess of $160,000. He also suffered lost wages and pain and suffering as a result of the accident. The driver of the automobile had liability insurance of $25,000 and no-fault medical coverage of $10,000. Mr. Brown had underinsured motorist

coverage of $50,000 and personal injury protection (PIP) coverage of $10,000. Public Employees Mutual Insurance Company (PEMCO), which insured both parties, paid the limits of each of these coverages.

At the time of the accident, Brown was covered under a health care service contract his employer had with Snohomish County Physicians Corporation (SCPC). While the contract generally provided for medical and hospital expenses incurred by Brown, it contained the following provision:

> Coverage will be excluded for expenses incurred or services rendered . . . for . . .
>
> . . . .
>
> b. Any . . . injury to the extent benefits are available to the patient under the terms of any automobile medical, automobile "no-fault," or similar contract or insurance, or are available under the terms of any uninsured motorist or underinsured motorist insurance coverage . . ..

Clerk's Papers (Brown), at 56.

Based upon this provision, after SCPC learned of the PEMCO coverage it advised that it would pay covered medical expenses over and above $70,000 (the total of Mr. Brown's $50,000 UIM coverage, his $10,000 PIP coverage, and the driver's $10,000 no-fault medical coverage).

Mrs. Brown, on her own behalf, as guardian for Mr. Brown, and on behalf of the marital community (hereafter Brown) filed a declaratory judgment action requesting that the court find the provision relied upon by SCPC invalid and unenforceable. Brown moved for summary judgment. Brown argued, among other things, that the provision is unenforceable as against public policy. SCPC filed a cross motion for summary judgment.

The trial court granted SCPC's motion for summary judgment. Brown appealed. The case was consolidated on appeal with Hogsett v. Snohomish County Physicians Corporation, discussed below. The Court of Appeals affirmed the trial court. *Brown v. Snohomish Cy. Physicians Corp.*, 63 Wn. App. 788, 822 P.2d 336, *review granted*, 119 Wn.2d 1002 (1992). Brown then sought discretionary review by this court, which was granted.

HOGSETT

On November 13, 1989, Ross Hogsett, the husband of petitioner Deborah Hogsett, died as a result of injuries sustained in an automobile accident. The driver of the other vehicle was uninsured. The Hogsetts had PIP coverage of $10,000, which the insurer, Viking Insurance, paid to cover the first $10,000 in medical bills. The Hogsetts also had uninsured motorist coverage of $25,000. Before his death, Mr. Hogsett incurred medical bills totaling $34,277.13.

Mr. Hogsett was covered under a health care service contract which his employer had with SCPC. Mrs. Hogsett submitted the remaining $24,277.13 in medical bills to SCPC. SCPC refused to pay this amount based upon the following provision:

> Coverage will be excluded for expenses incurred or services rendered, including complications thereof, for the following:
> . . . .
> b. Any . . . injury to the extent benefits are available to the patient under the terms of any vehicle insurance policy pursuant to: (1) medical coverage, medical "no-fault" coverage, Personal Injury Protection coverage, or similar medical coverage contained in said policy; and/or (2) uninsured motorist or underinsured motorist coverage contained in said policy . . ..
> For the purposes of this exclusion, benefits shall be deemed to be "available" to the patient if the patient is a named insured, comes within the policy definition of insured, or is a third-party donee beneficiary under the terms of the policy.

Clerk's Papers (Hogsett), at 76-77.

Mrs. Hogsett filed suit against SCPC seeking a declaratory judgment that the provision is invalid, and sought injunctive relief and damages (including damages under the Consumer Protection Act). She moved for partial summary judgment on the validity of the provision. The trial court denied the motion. Pursuant to CR 54(b), final judgment was entered on this claim. Mrs. Hogsett appealed. The trial court dismissed her other claims without prejudice.

This case was consolidated with Brown v. Snohomish County Physicians Corporation, discussed above. As noted, the Court of Appeals affirmed the trial court. Hogsett then sought discretionary review, which was granted.

ANALYSIS

■ Brown's case concerns summary judgment granted in favor of SCPC. In reviewing a grant of summary judgment, the appellate court engages in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Marincovich*, at 274. There are no disputed material facts, and the question is whether as a matter of law SCPC was entitled to summary judgment.

In Hogsett's case, denial of Hogsett's motion for summary judgment was certified as a final judgment. Again, there are no disputed issues of material fact and the question is whether Hogsett was entitled to judgment as a matter of law.

Both Brown and Hogsett argue that the provisions "excluding" medical coverage to the extent benefits are available under UIM coverage violate public policy and therefore are invalid and unenforceable.[1]

Both parties have relied upon general rules applicable to insurance policies. SCPC is a health care service contractor, which is defined as

[a]ny corporation, cooperative group, or association, which is sponsored by or otherwise intimately connected with a provider or group of providers, who or which not otherwise being engaged in the insurance business, accepts prepayment for health care services from or for the benefit of persons or

---

[1]In both parties' petitions for review the public policy issue is limited to whether the provisions violate public policy insofar as UIM coverage is concerned. Neither party raises as an issue the question whether the provisions invalidly "exclude" coverage where benefits are available through PIP insurance. See Petition for Review (Brown), at 1-2; Petition for Review (Hogsett), at 1-2. We therefore do not address the validity of the provisions insofar as they purport to "exclude" medical coverage to the extent of available PIP coverage. *See* RAP 10.3(a)(3).

groups of persons as consideration for providing such persons with any health care services.

RCW 48.44.010(3). There is some question about the extent to which insurance law applies to the contracts at issue here. *Compare* RCW 48.44.020(1) *with, e.g.,* RCW 48.44.309.

■ For purposes of this case, however, we agree with the parties that general rules respecting insurance policies should be applied in resolving the public policy issue. *Cf. Myers v. Kitsap Physicians Serv., Inc.,* 78 Wn.2d 286, 288, 474 P.2d 109, 66 A.L.R.3d 1196 (1970) (holding that rules of interpretation generally applicable to insurance contracts apply to health care service contracts).

■ Turning to the merits of the issue, "limitations in insurance contracts which are contrary to public policy and statute will not be enforced, but otherwise insurers are permitted to limit their contractual liability." *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 481, 687 P.2d 1139 (1984); *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 210, 643 P.2d 441 (1982), *aff'g on rehearing,* 95 Wn.2d 373, 622 P.2d 1234 (1980). Washington courts have hesitated to "invoke public policy to limit or avoid express contract terms absent legislative action." *Emerson,* at 481; *see Boeing Co. v. Aetna Cas. & Sur. Co.,* 113 Wn.2d 869, 876 n.1, 784 P.2d 507, 87 A.L.R.4th 405 (1990). Where appropriate, though, public policy has been invoked to invalidate insurance contract provisions.

■ Public policy is not a precisely defined term, and, in fact, may not be amenable to an exact definition. *See generally* Brachtenbach, *Public Policy in Judicial Decisions,* 21 Gonz. L. Rev. 1 (1985-1986). The court has said that generally a contract does not violate public policy where it is not "prohibited by statute, condemned by judicial decision, or contrary to the public morals . . . .' " *Emerson,* at 481 (quoting 17 C.J.S. *Contracts* § 211, at 1024 (1963)). The court stated:

"The term 'public policy,' . . . embraces all acts or contracts which tend clearly to injure the public health, the public morals,

the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel."

*Emerson*, at 483 (quoting *LaPoint v. Richards*, 66 Wn.2d 585, 594-95, 403 P.2d 889 (1965)); *see also Makinen v. George*, 19 Wn.2d 340, 354, 142 P.2d 910 (1943) ("[p]ublic policy in its broad sense is that principle of law holding that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good"). Public policy is not static, but may change as the relevant factual situation and the thinking of the times change. *Pierce v. Yakima Vly. Mem. Hosp. Ass'n*, 43 Wn.2d 162, 166, 260 P.2d 765 (1953).

▮ Petitioners claim that the provisions violate public policy favoring adequate indemnification of innocent automobile accident victims and public policy underlying UIM coverage. We agree.

In *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978), this court addressed the question of priorities as between an insurer and the insured to proceeds of a settlement which the insured entered with the party responsible for the insured's injuries. The injuries resulted from an automobile accident. The insured had PIP coverage under which the insurer agreed to cover certain medical expenses and income losses. The policy provided that if the company paid benefits under this provision, the insurer would be entitled to the proceeds of any settlement from the responsible person to the extent that the settlement included any " 'expense, amount or payment for which such benefits were paid.' " *Thiringer*, at 216 (quoting policy). The policy also provided the insurer a right of subrogation.

In deciding the question of how the proceeds should be allocated, the court reasoned that

while an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a tort-feasor responsible for the damage, it can recover only the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss. . . .

This rule embodies a policy deemed socially desirable in this state, in that it fosters the adequate indemnification of innocent automobile accident victims.

(Citations omitted.) *Thiringer*, at 219-20.

The court also observed that absent statutes to the contrary, courts resolved cases like the one before it by considering equitable factors, "guided by the principle that a party suffering compensable injury is entitled to be made whole but should not be allowed to duplicate his recovery." *Thiringer*, at 220.

Petitioners maintain that *Thiringer* stands for the principle that public policy favors adequate indemnification of innocent automobile accident victims, and that until such a victim is fully compensated for general and nonduplicative special damages the provisions at issue here should not be enforced to effectively reduce compensation received pursuant to UIM coverage.

SCPC maintains, and the Court of Appeals held, that *Thiringer* was decided on subrogation principles, and that subrogation "is a distinct equitable doctrine with its own characteristics." *Brown v. Snohomish Cy. Physicians Corp.*, 63 Wn. App. 788, 796, 822 P.2d 336, *review granted*, 119 Wn.2d 1002 (1992). The Court of Appeals said that in *Thiringer* the insured had purchased the PIP coverage and coverage was conceded. In these cases, by contrast, the Court of Appeals reasoned, the issue is whether coverage exists. *Brown*, at 796. The court said that the premiums for the medical coverage were calculated based upon the underwriting impact of the provision, and the subscribers had not paid for coverage made unavailable by the provision. *Brown*, at 796. The court said that the lesson of *Thiringer* is that if you pay for coverage, you get it. *Brown*, at 796.

The Court of Appeals reads *Thiringer* too narrowly. As we expressly observed in *Keenan v. Industrial Indem. Ins. Co. of Northwest*, 108 Wn.2d 314, 319, 738 P.2d 270 (1987) "[t]he key factor" in *Thiringer* was "the presence or absence of double recovery", not subrogation principles or premiums.

The public policy favoring full compensation of innocent automobile accident victims does not arise only in situations involving subrogation.

The policy expressed in *Thiringer* favoring full compensation of innocent automobile accident victims is reflected in the UIM statute. We recently observed:

> The strong public policy of protecting the innocent victim of an auto accident from the uninsured motorist is carried over to the underinsured motorist. *See Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 208, 643 P.2d 441 (1982) (citing *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 332, 494 P.2d 479 (1972)).
>
> In protecting the innocent victim of an auto accident, UIM insurance provides a source of indemnification when the tortfeasor does not provide adequate protection.

*Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 87, 794 P.2d 1259 (1990).

Hogsett's case demonstrates how the "exclusion" provision affects the UIM coverage. In Hogsett's case, the at-fault party had no liability coverage. The Hogsetts had $25,000 UIM coverage. After their PIP coverage paid the first $10,000 of Mr. Hogsett's medical expenses, all but $723 of their UIM coverage would count toward medical expenses if the contract provision "excluding" coverage to the extent of available UIM coverage was valid. If the at-fault party had possessed liability coverage of $25,000 which was paid to Mrs. Hogsett, the health care service contract provision would not have applied and the medical expenses would have been covered by the SCPC contract. Mrs. Hogsett would have the $25,000 liability proceeds. In a practical sense, the provision, if applicable, would clearly impact the UIM coverage. Mrs. Hogsett would be worse off by having to rely on the Hogsetts' UIM coverage instead of liability coverage of the tortfeasor.

That result would be contrary to public policy. This court has said that the statutory purpose of UIM coverage is to allow "an injured party to recover those damages which the injured party would have received had the responsible party been insured with liability limits as broad

as the injured party's statutorily mandated underinsured motorist coverage limits." *Blackburn*, at 87 (quoting *Hamilton v. Farmers Ins. Co. of Wash.*, 107 Wn.2d 721, 727, 733 P.2d 213 (1987) (quoting *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 531, 707 P.2d 125 (1985))); *accord, Keenan v. Industrial Indem. Ins. Co. of Northwest*, 108 Wn.2d 314, 320, 738 P.2d 270 (1987). The end result in these cases under the Court of Appeals' analysis is that as a result of the provisions, Brown and Hogsett would have less money for their injuries than they would have received had the at-fault parties had liability coverage in the amount of the Browns' and the Hogsetts' underinsured motorist coverage. That result would be antithetical to the policy favoring full compensation of innocent automobile accident victims.

The court has also said that the purpose of UIM coverage is to provide the insured with a second layer of protection which "floats" on the top of recovery from other sources. *Blackburn*, at 87; *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 549, 707 P.2d 1319 (1985); *Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d 107, 120, 795 P.2d 126 (1990) (Callow, C.J., concurring). The second layer of protection is not without limits. As the majority in *Tissell* noted, the UIM statute provides a "second floating layer of protection in every case in which the insured is 'legally entitled to recover' damages from the negligent tortfeasor." *Tissell*, at 120 (Callow, C.J., concurring); *see* RCW 48.22.030.

To the extent that the provisions here operate to exclude coverage for medical expenses before the injured party is fully compensated for general damages and other special damages, the second floating layer of coverage is effectively negated by the provisions.

SCPC and amicus curiae Health Care Contractors Amicus Group (HCCAG) argue, however that the health care service contract provisions promote the competing public policy favoring low cost health care coverage. They maintain that an individual has the ability to purchase UIM coverage sufficient to cover damages, and that neither party here did so. They maintain that premiums for health care coverage

would have to be increased if the provisions are invalidated. They argue that health care service plans should not have to bear the cost attributable to automobile accident victims who have purchased insufficient UIM coverage.

Of course, low cost health care is desirable. However, we do not agree that the strong public policy of *Thiringer* and UIM coverage must yield to health care service contract provisions like those involved here. SCPC has conceded that "the cost of treatment of injuries sustained in automobile accidents is a relatively small percentage of the total costs of medical care provided under SCPC health care contracts." Petition for Review (Response to Hogsett), at 3. Neither SCPC nor HCCAG has made any attempt to identify what increased costs would result if the provisions are invalidated, and, given SCPC's statement, it does not appear that health care coverage would be seriously affected by invalidation of the provisions.

More fundamentally, the question is not solely one of rates for health care coverage. The strong public policy favoring full compensation of innocent automobile accident victims who must rely on their own UIM coverage cannot be abrogated simply because the cost of health care service contracts may go up to some degree.

We note that, in general, insurance contract provisions which prevent double recovery will be enforced as not violative of public policy. *See generally Keenan.* Thus, the provisions at issue may be enforced, *but only to the extent they bar double recovery, i.e.,* they "exclude" coverage only to the extent necessary to prevent double recovery for medical expenses.

Amicus curiae Washington State Trial Lawyers Association (WSTLA) and Hogsett maintain that the burden should be on SCPC to establish that the injured parties have been fully compensated and that the provisions may be applied to prevent double recovery.

When the insured makes the prima facie case that there is coverage, the burden is on the insurer to prove that the loss is not covered because of an exclusionary provision

in the policy. *Burrier v. Mutual Life Ins. Co. of N.Y.*, 63 Wn.2d 266, 270, 387 P.2d 58 (1963); *PEMCO v. Rash*, 48 Wn. App. 701, 703, 740 P.2d 370 (1987). We conclude this rule applies here,[2] and the burden is on SCPC to establish that Brown and Hogsett were fully compensated and that the contract provisions should be applied to prevent double recovery for medical expenses.

We next comment on two aspects of the Court of Appeals' opinion. The Court of Appeals said that it had already upheld an exclusion which, for public policy purposes, was the same as that at issue in this case. *Brown v. Snohomish Cy. Physicians Corp.*, 63 Wn. App. 788, 795, 822 P.2d 336 (citing *Snohomish Cy. Physicians Corp. v. Jungaro*, 58 Wn. App. 579, 794 P.2d 76 (1990)), *review granted*, 119 Wn.2d 1002 (1992). In *Jungaro* the court reasoned that the exclusion there was not prohibited by statute and the cases upon which the Jungaros relied did not support their position that the exclusion violated public policy.

Petitioners argue, however, that *Jungaro* is distinguishable because in *Jungaro* the injured party was fully compensated and the court's decision was consistent with the principle that while the insured is entitled to be made whole, the insured is not entitled to obtain a double recovery. It is not clear from the opinion whether factually petitioners are correct.[3] It is clear, however, that the court in *Jungaro* did not expressly consider any argument like the one petitioners make here, *i.e.*, that until there has been full

---

[2]There is a question in this case whether the provisions are in fact "exclusions". Resolution of the question of the precise nature of the clauses is not necessary to our disposition of these cases. Regardless of how they are characterized, they act to limit coverage contrary to public policy.

[3]The opinion reveals that SCPC paid $21,736.08 in medical bills, that Jungaro settled his third party claim against the tortfeasor for that person's liability insurance policy limit of $60,000, and that Jungaro ultimately received an arbitration award from Grange (his underinsured) for $170,588.23, which was "the total value of Jungaro's claim, including medical bills incurred". *Jungaro*, at 581. What is unknown is whether the claim amount represents full compensation, although it seems doubtful that Jungaro would have requested less than full compensation (or the limits of the underinsured coverage).

recovery for general and nonduplicative special damages, the "exclusion" should not apply.

In any event, to the extent *Jungaro* is inconsistent with our analysis here, it is overruled.

The Court of Appeals also addressed the question whether the Insurance Commissioner had approved the provisions at issue. The court noted that RCW 48.44.020 authorizes the Insurance Commissioner to disapprove any health care contract form which "contains or incorporates by reference any inconsistent, ambiguous or misleading clauses, or exceptions and conditions which unreasonably or deceptively affect the risk purported to be assumed . . .." *Brown*, at 797 (quoting RCW 48.44.020(2)(a)).

The Court of Appeals agreed with Brown that it appears that the Insurance Commissioner has not disapproved the SCPC contract, but concluded that "the issue of whether the exclusion is valid and enforceable would be seriously impacted only by a finding that the Insurance Commissioner had disapproved the language." *Brown*, at 797-98.

Materials before this court establish that the Insurance Commissioner has in fact disapproved the provisions at issue. However, our decision is based upon public policy and is not founded on the Insurance Commissioner's approval or disapproval of the provisions.

Finally, Hogsett has moved to supplement the record with a full copy of the contract at issue in that case. This motion is superfluous, as a complete copy is already part of the record. Clerk's Papers, at 141-55. The motion is therefore denied.

In light of our disposition of the public policy issue, we do not address additional issues raised by petitioners.

The grant of summary judgment in Brown's case in favor of SCPC is reversed. The denial of summary judgment in Hogsett's case is reversed insofar as the provision is invalid. The cases are remanded for further proceedings consistent with this opinion.

DORE, C.J., and UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.