BOARD OF COMMISSIONERS OF the PORT OF NEW ORLEANS et al., Plaintiffs,

v.

M/V RACHAEL GUIDRY et al., Defendants.

Civ. A. Nos. 75–3225, 76–228.

United States District Court, E. D. Louisiana.

Jan. 12, 1977.

---

22. *See United States General, Inc. v. Arndt*, 417 F.Supp. 1300 (E.D.Wis.1976).

Phelps, Dunbar, Marks, Claverie & Sims, Charles E. Dunbar, III, Joseph P. Tynan, New Orleans, La., for Bd. of Com'rs of the Port of New Orleans.

Donald V. Organ, New Orleans, La., for M/V Rachael Guidry, Northwest Ins., Gretna Towing & Dual Marine, and East-West Towing.

John Poitevent, New Orleans, La., for Utica Mutual Ins. Co.

Edith Brown Clement, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiff.

Donald V. Organ, New Orleans, La., for Mid Continent Underwriters, Inc. and M/V Rachael Guidry, Northwest Ins., Gretna Towing and Dual Marine.

ALVIN B. RUBIN, District Judge.

The sole issue is the extent of liability of the primary insurer in a case concluded by a settlement to which all parties consented.

## I

The Board of Commissioners of the Port of New Orleans (the Board) and Le Gardeur International, Inc. (Le Gardeur) sued the M/V RACHAEL GUIDRY, and her owners; North-West Insurance Company (North-West), her primary insurer; and Utica Mutual Insurance Company (Utica), her excess insurer. All claims were settled by payment of $104,028.51 to the plaintiffs. In addition there are defense costs to be defrayed. North-West and Utica agree that, between them, they are liable for the full sum; they disagree about what part is to be paid by North-West as primary insurer.

The North-West policy reads:

Aggregate limit per occurrence: $100,000.00

1. . . . in the event the vessel named herein shall come into collision with any other vessel, craft or structure, floating or otherwise (including her tow) . . . or shall cause any other loss or damage to her tow or to the freight thereof or to the property on board, and the assured, in conse-

quence of the vessel named herein being at fault, shall become legally liable to pay and shall pay by way of damages to any other person or persons any sum or sums, this Assurer will pay its proportion of such sum or sums so paid, provided that the liability of this Assurer in respect of any one such casualty shall not exceed the amount insured hereunder. And in cases where the liability of the vessel named herein has been contested or proceedings have been taken to limit liability, with the consent in writing of this Assurer, this Assurer will also pay a like proportion of the costs, which the Assured shall thereby incur or be compelled to pay . . . .

\*     \*     \*     \*     \*     \*

2. This policy also covers:
Costs and expenses, incurred with this Assurer's approval, of investigating and/or defending any claim or suit against the Assured arising out of a liability or an alleged liability of the Assured covered by this policy.

3. Liability hereunder in respect of loss, damage, costs, fees, expenses or claims arising out of or in consequence of any one occurrence is limited to the amount hereby insured.

\*     \*     \*     \*     \*     \*

7. This Assurer shall have the option of naming the attorneys who shall represent the Assured in the prosecution or defense of any litigation or negotiations between the assured and third parties concerning any claim covered by this policy, and shall have the direction of such litigation or negotiations. If the Assured shall fail or refuse to settle any claim as authorized by this Assurer, the liability of this Assurer shall be limited to the amount for which settlement could have been made. The Assured shall at the option of this Assurer permit this Assurer to conduct, with an attorney of this Assurer's selection, at this Assurer's cost and expense and under its exclusive control, a proceed-

ing in the Assured's name to limit the Assured's liability to the extent, and in the manner provided by the present and any future statutes relative to the limitation of a shipowner's liability.

North-West, as primary insurer, maintains that it is entitled to deduct from its policy limit of $100,000.00 all costs, legal fees and expenses incurred in defending this lawsuit, the sum of approximately $15,000.00. It therefore maintains that it should pay only $85,000.00 to satisfy the claim and that excess should pay the rest, $19,028.51. Utica, as excess insurer, maintains that North-West is legally obligated to contribute the full limit of its policy ($100,000.00) in addition to the $15,000 expended in defense of the suit and excess should pay only the balance ($4,028.51).

### II

■   Clause 3 of the contract appears to be unambiguous; it limits *all* liability by North-West to $100,000. It specifically mentions that this includes "costs, fees, [and] expenses."

■   Of course, what the insurer spends in connection with an occurrence must be authorized by the policy, or the insurer cannot credit it toward the $100,000 limit. If the insurer sends flowers to the insured, or entertains its adjustors at Antoine's, these disbursements might not count toward the $100,000. Similarly, any costs incurred for legal fees that are not authorized under the policy may not count toward the limit. If the insurer had been sued by the insured for malpractice in handling a claim, the cost of insurer's legal defense should not count toward the $100,000 although the suit arose out of the occurrence. Nor do we deal with the situation where the assured has one lawyer and the insurer had another, so that dual counsel's fees are being sought. Here it was clearly necessary to retain counsel to represent the vessel. It is of no importance that counsel was selected by the insurer rather than by the insured.

■   Under a P and I Policy of this type, the policy does not obligate the insur-

er to defend the insured. (See clause 7, quoted above.) But this merely means that, as between the insurer and the insured, it is the duty of the insured to defend. After it does so, the insurer is liable for "costs and expenses, incurred with . . . insurer's approval, of investigating and/or defending." (Clause 2). This means that the policy limit is comprehensive; it includes defense costs.

If the insured retains a lawyer and defends the case, the insurer must reimburse the insured for any expenses that the insured incurs in defending. The amount that the insurer reimburses the insured counts toward the policy limit.

In a case decided by another judge of this court, *Verrett v. Ordoyne Towing Co., Inc.*, 72–2145, the judge concluded that, where the insurer had itself incurred the costs of defense, as opposed to reimbursing the insured, then it could not count the expenditure toward the policy limit. He reasoned that the expenditure by the insurer, like the supposititious flowers or dinner at Antoine's, was not an obligation under the contract, and hence the insured might not properly be charged for it.

But I must respectfully differ with this conclusion. Whether the insurer reimburses the insured, or incurs the costs of defense directly, is not a controlling consideration. In both instances, the insurer may name the insured's attorney and direct the litigation. The insurer would ultimately pay in both instances, at least to the extent of the policy limit.

If it were to make a difference who was the named defendant, the insurer could not credit the policy if he alone were sued under the direct action statute, but could credit the policy if the insured alone were sued. This result would allow the direct action statute effectively to increase the liability of the insurer, when its effect should be purely procedural. *American Indemnity Co. v. Soloman*, 5th Cir. 1956, 231 F.2d 853, 856.

The other authorities cited by Utica, as excess, are inappropriate. They deal with situations where the policy imposes on the insurer both the duty of defense and liability for judgment up to a stated amount. Thus, with respect to such policies, 8 Appleman, Insurance Law and Practice, § 4685, states:

> The insurer's duty is both to defend actions *and* to pay judgment against the insured. Otherwise, where the damages exceed the policy coverage, the insurer could walk into court, toss the amount of the policy on the table, and blithely inform the insured that the rest was up to him. This would obviously constitute a breach of the insurer's contract to defend actions against the insured and should not be tolerated by the courts.

For similar reasons, the courts in *American Casualty Co. of Reading Pa. v. Howard*, 4th Cir. 1951, 187 F.2d 322, 326–327, and *National Casualty Co. v. Ins. Co. of North America*, N.D.Ohio 1964, 230 F.Supp. 617, 622, held that the duty to defend and the duty to pay for injuries are independent. However, under the policy here involved, the insurer has no independent duty to defend.[1]

For these reasons, judgment is rendered declaring that the North-West policy entitles it to deduct costs of defense from the policy. The parties are to agree on the amount of the money judgment to be entered and present a form of judgment agreeable to both within 15 days. If they cannot agree, the issues will be presented by appropriate judgment.

---

1. In a reply brief, excess attached a fragment of correspondence indicating that at one time counsel for primary may have written the insured that it would pay $100,000 without deducting the cost of defense. It is not clear whether this is an effort to argue an alteration of the policy terms, a waiver, an estoppel or some other theory. Excess has not offered to adduce the correspondence or any other evidence. If some argument not yet made is sought now to be offered, or an effort is being made to introduce evidence, a motion clearly asserting what is sought should be presented.