[No. 15466-8-II.    Division Two.    April 8, 1994.]

ADAM J. ROSS, JR., ET AL, *Respondents*, v. FRANK B. HALL & CO. OF WASHINGTON, *Defendant*, RONALD MALCOMB PATEMAN, ET AL, *Appellants*.

*G. Val Tollefson* and *Danielson, Harrigan & Tollefson,* for appellants.

*James Robert Orlando* and *Rovai & Helbling,* for respondents.

HOUGHTON, J. — Frank B. Hall & Company, et al., as assurer/insurer, appeal a summary judgment in favor of Adam J. Ross and his wife as assureds/insureds, that awarded the Rosses $86,102.48 deducted as defense costs from the limits of their liability insurance policy. We reverse and remand to the trial court for further proceedings.

## FACTS

This case arises out of a previous lawsuit brought by Jeff Brady against Adam J. Ross, Jr. (Ross), Excursion Inlet Packing Company (Excursion Inlet), Ward's Cove Packing Company (Ward's Cove), and the F/V *Jackie R (Jackie R)*, a commercial fishing vessel owned by Ross. On August 7, 1986, Jeff Brady, a crew member, suffered a traumatic amputation

of his right foot while engaged in fishing activities on board the *Jackie R.* At the time of Brady's accident, Ross was fishing for Excursion Inlet. Excursion Inlet lent Ross the money to build his boat, and Ross entered into an agreement to fish for Excursion Inlet for 5 years or until the loan was repaid.

Excursion Inlet had a preferred marine mortgage on the *Jackie R* and required that Ross insure the vessel to protect Excursion Inlet's interest. Ross opted to be added to Excursion Inlet's fleet policy issued by Underwriters at Lloyd's and Insurance Companies (Underwriters). Ross completed an application and Excursion Inlet obtained the insurance for the *Jackie R* through the insurance brokers Frank B. Hall & Co. of Washington.

The Excursion Inlet fleet policy was written on a marine Protection and Indemnity (P&I) form known as an SP-23. That policy provided $250,000 in primary P&I coverage and $250,000 in excess P&I coverage. The policy was subject to a $5,000 deductible for any one accident or occurrence for each vessel and subject to the Fishing Vessel Clauses. The assureds under the policy were Ward's Cove, Columbia Wards Fisheries Company, and Excursion Inlet. Ross became an additional insured when the *Jackie R* was added to the fleet policy.

The coverage section of the policy lists 14 "liabilities, risks, events and/or happenings" for which the assurer would provide indemnity. Payments were made under this portion of the policy for personal injury liability, maintenance and cure (medical costs), and defense costs and expenses.

After the Brady accident, Ross notified the insurers and was advised they would handle the loss. The investigation of the injury claim was assigned by Frank B. Hall & Co. to Rosemurgy and Co., independent insurance adjusters. The insurers assigned the defense of Brady's action against Ross, Excursion Inlet and Ward's Cove to the law firm of Lane Powell Moss & Miller.

The total insurance available under the policy for the Brady accident was $500,000. Ross paid the $5,000 deductible required under the policy. Underwriters made payments

directly to Brady or his medical care providers for maintenance and cure, and for lost wages.

The Brady lawsuit settled for $425,000. At the time of settlement, defense costs in the Brady lawsuit totaled approximately $86,000. Underwriters paid the liability limit remaining under the policy after deducting the amount of payments for maintenance and cure, lost wages, and defense costs. Because Underwriters made these deductions from the policy limits, Ross was required to pay $86,102.48 to effect the settlement.

In June 1990, Ross brought an action against Frank B. Hall & Company, Ronald Malcomb Pateman, and Underwriters. Ross's complaint alleged that: (1) Frank B. Hall & Company was negligent in not including Ross in a "second excess" coverage plan written for Ward's Cove and in assigning the defense of Brady's action against Ross to the same law firm defending Ward's Cove and Excursion Inlet; and (2) Pateman and Underwriters improperly deducted defense costs from the primary and excess coverage under the policy. The complaint further alleged that the Defendants' actions constituted bad faith, breach of contract, violation of RCW 48.01.030, and unfair and deceptive acts under Washington's Consumer Protection Act (RCW 19.86).

Ross filed a motion for an order granting partial summary judgment of liability based upon a breach of contract by Underwriters for improperly deducting the defense costs from the insurance policy limits. Underwriters filed a cross motion for summary judgment of dismissal with prejudice.

The trial court entered an order granting Ross's motion for partial summary judgment, finding that the insurance contract language relied upon by the defendant did not allow for the deduction of attorney's fees incurred by Underwriters in excess of the deductible from the policy limits. Underwriters's cross motion for summary judgment was denied. The trial court ordered that Ross's bad faith and Consumer Protection Act claims should be continued, and the court reserved ruling on Ross's claim for reasonable attorney's fees pending further proceedings in the matter.

The court awarded judgment against Underwriters for $86,102.48 plus prejudgment interest. Additionally, pursuant to CR 54(b), the court directed entry of a final judgment as to Ross's contract liability claim based upon the improper deduction of defense costs. Underwriters appeals.

### ANALYSIS

■ Underwriters argues the trial court erred in declaring that the insurance contract did not allow defense costs, incurred directly by the insurer, to be deducted from the policy limits. As an appellate court reviewing an order of summary judgment, we perform the same inquiry as the trial court. *Hill v. J.C. Penney, Inc.,* 70 Wn. App. 225, 238, 852 P.2d 1111, *review denied,* 122 Wn.2d 1023 (1993); *Simpson Tacoma Kraft Co. v. Department of Ecology,* 119 Wn.2d 640, 646, 835 P.2d 1030 (1992). A court grants summary judgment only when no genuine issue of material fact exists and when the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Nationwide Mut. Fire Ins. Co. v. Watson,* 120 Wn.2d 178, 186, 840 P.2d 851 (1992).

■ ■ The interpretation of an insurance policy is a question of law. *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists. Util. Sys.,* 111 Wn.2d 452, 456, 760 P.2d 337 (1988); *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 480, 687 P.2d 1139 (1984). State law controls the interpretation of a marine insurance policy only in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice. *Port Lynch, Inc. v. New England Int'l Assurety of Am., Inc.,* 754 F. Supp. 816, 820 (W.D. Wash. 1991) (citing *Bohemia, Inc. v. Home Ins. Co.,* 725 F.2d 506, 510 (9th Cir. 1984)); *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 313-14, 99 L. Ed. 337, 75 S. Ct. 368, 370 (1955); *Kossick v. United*

*Fruit Co.,* 365 U.S. 731, 741-42, 6 L. Ed. 2d 56, 81 S. Ct. 886, 893-94 (1961). *See also Berkeley v. Fireman's Fund Ins. Co.,* 407 F. Supp. 960, 965 (W.D. Wash. 1975).

Because we find there is no federal statute, we turn to a review of federal case law to determine whether there is a well established judicially fashioned admiralty rule regarding the deduction of defense costs from marine P&I insurance policy limits. In three cases cited by Underwriters, the courts upheld the insurer's deduction of defense costs from the insurance policy limits. *See, e.g., Geehan v. Trawler Arlington, Inc.,* 547 F.2d 132 (1st Cir. 1976); *Darville v. Rahming Shipping, Ltd.,* 1988 AMC 1782 (S.D. Fla. 1987); *Board of Comm'rs of Port of New Orleans v. M/ V Rachael Guidry,* 425 F. Supp. 661 (E.D. La. 1977).

■ Yet, in *Darville,* the court plainly states these cases turn on the specific language of the policy and do not state any general rule of law. *Darville,* 1988 AMC at 1783. We also note that not all courts addressing the issue of deductibility of defense costs from the limits of a marine P&I policy have allowed such deduction. *See Verrett v. Ordoyne Towing Co.,* 1977 AMC 795, 796 (E.D. La. 1974). We conclude there is insufficient authority to support Underwriters's claim of a well established federal rule regarding the deduction of defense costs from marine P&I insurance policy limits. Thus, we turn to state law regarding construction of the insurance contract. *Farmers Home Mut. Ins. Co. v. Insurance Co.,* 20 Wn. App. 815, 819, 583 P.2d 644 (1978), *review denied,* 91 Wn.2d 1014, *cert. denied,* 442 U.S. 942 (1979).

■ In construing the language of an insurance policy, the entire contract must be construed together so as to give force and effect to each clause. *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists. Util. Sys.,* 111 Wn.2d 452, 456, 760 P.2d 337 (1988); *Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 434, 545 P.2d 1193 (1976). If the language of an insurance contract is clear and unambiguous, the court must enforce it as written and may not modify the contract or create ambiguity where none exists. *Morgan,* at 435.

When read in its entirety, the contract language in the P&I (Form SP-23) policy and the Fishing Vessel Clauses endorsement is not ambiguous. Here, the relevant provisions of the P&I policy state:

The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth:

> (1) Liability for loss of life of, or personal injury to, or illness of, any person, excluding, however, unless otherwise agreed by endorsement hereon, liability under any Compensation Act to any employee of the Assured, (other than a seaman) or in case of death to his beneficiaries or others.
>
> . . . .
>
> (2) Liability for hospital, medical or other expenses necessarily and reasonably incurred in respect of loss of life of, personal injury to, or illness of any member of the crew of the vessel named herein or any other person. . . .
>
> . . . .
>
> (14) Costs, charges, and expenses reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided.

The "General Conditions and/or Limitations" section of the policy contains a provision regarding law costs, which states:

The Assurer shall not be liable for the cost or expense of prosecuting or defending any claim or suit unless the same shall have been incurred with the written consent of the Assurer, or the Assurer shall be satisfied that such approval could not have been obtained under the circumstances without unreasonable delay, or that such costs and charges were reasonably and properly incurred, such cost or expense being subject to the deductible. . . .

The Assurer shall be liable for the excess where the amount deductible under this policy is exceeded by: (A) the cost of investigating and/or successfully defending any claim or suit against the Assured based on a liability or an alleged liability of the Assured covered by this insurance, or (B) the amount paid by the Assured either under a judgment or an agreed settlement based on the liability covered herein including all costs, expenses of defense and taxable disbursements.

The policy further provides that "[l]iability hereunder in respect of any one accident or occurrence is limited to the amount hereby insured."

These provisions clearly and unambiguously define Underwriters's liability under the policy. Provision 14 of the liability section, as well as the law costs provisions under the general conditions and/or limitations section of the policy, support a conclusion that defense costs are covered under the policy, subject to the deductible. However, the last paragraph of the policy expressly limits Underwriters's liability under the policy to the amount insured, which in this case is $500,000. This language plainly shows that Underwriters did not have an open-ended obligation to pay defense costs.

The Fishing Vessel Clauses issued by C.A. Parr Ltd., and attached to the primary P&I policy, provides in pertinent part:

> If this insurance is written subject to a deductible the Assured agrees that the attorneys or claims adjusters appointed by the Underwriters shall likewise act on his behalf. The Assured further undertakes to furnish immediately on demand by such attorneys or claims adjusters any amount required to negotiate or settle any claim and to pay any legal or investigation charges up to the amount of the deductible.
>
> . . . .
>
> It is understood that liability hereunder in respect of loss, damages, costs, fees, expenses and/or claims arising out of or in consequence of any one occurrence is limited to the amount hereby insured.

A condition of coverage under the policy states "[s]ubject to a deductible of $5,000 [f or] any one accident or occurrence each vessel."

The first paragraph of the Fishing Vessel Clauses essentially establishes a duty of the assured. This paragraph provides that when the P&I policy is subject to a deductible, the assured must pay on demand any amount, up to the amount of the deductible, required to negotiate or settle a claim or pay legal investigation charges.

However, the language of this clause does not, in and of itself, limit the assured's liability to the amount of the deductible. Similar to the last paragraph of the P&I policy, the

Fishing Vessel Clauses expressly provides that Underwriters's "liability hereunder in respect to loss, damages, costs, fees, expenses and/or claims" is limited to the amount insured. Thus it logically follows that if the policy limits were exhausted, the assured would be accountable for any loss, damages, costs, fees, expenses and/or claims exceeding the policy limit.

Based upon the clear and unambiguous language of the P&I policy and the Fishing Vessel Clauses, we hold Underwriters was entitled to deduct fees and expenses of defense from the limits of this marine insurance policy. However, even with such a policy allowing deduction for costs of defense, the insurer arguably has a duty to keep the insured informed of such costs, to see that such charges are reasonable, and to otherwise fulfill its fiduciary duties. These issues can be addressed at the trial court level on the remaining claim based upon allegations of insurer bad faith. Accordingly, we reverse the trial court's order granting partial summary judgment and remand to the trial court for further proceedings.

MORGAN, C.J., and ALEXANDER, J., concur.