[No. 44282-1-I. Division One. September 18, 2000.]

KIMTA AS, ET AL., *Respondents*, v. ROYAL INSURANCE COMPANY, ET AL., *Petitioners*.

MARINE RESOURCES COMPANY INTERNATIONAL, *Respondent*, v. MARTIN REITH, ET AL., *Petitioners*.

*James W. Talbot* (of *Bauer, Moynihan & Johnson*), for petitioners Royal Insurance Company and John Deere Insurance Company.

*Richard F. Allen* and *Christopher W. Nicoll* (of *Lane Powell Spears Lubersky, L.L.P.*), for petitioners Martin Reith, et al.

*Jacquelyn A. Beatty* (of *Karr Tuttle Campbell*), for respondents Kimta AS, et al.

*Douglas M. Fryer* (of *Moriarty, Mikkelborg, Broz, Wells & Fryer*), for respondent Marine Resources Company International.

BECKER, A.C.J. — This is a marine insurance coverage dispute involving seafood cargo that was confiscated by Russian authorities. The insurers denied coverage for the seized cargo based on an exclusion known as the Free of Capture and Seizure Clause. Under settled federal law in cases addressing the effect of this clause, the seizure was the efficient proximate cause of the loss as a matter of law,

even though it might be found that a covered risk was a cause of the seizure. We direct entry of summary judgment for the insurers.

## I

The ship, the M/V Bikin, was transporting cargo from the Russian Far East to Korea. The cargo included fish and crab worth approximately three million dollars. In December of 1996, Russian authorities arrested the vessel and its cargo. The grounds for the arrest included the failure of the ship's captain to comply with orders of Russian authorities to return to port, as well as the fact that the ship was not carrying a required transshipment permit. Following judicial proceedings in Russia, the Russian authorities confiscated the cargo and sold it at auction. The owners of the ship's cargo submitted a claim to their insurers.

The cargo owners had substantially identical Marine Open Cargo policies insuring the transportation of their cargo. The policies insure against all risks of "physical loss of, deterioration of or damage to the subject-matter insured from any external cause". The policies also contain what is called an "Inchmaree" clause which specifically provides coverage for loss caused by negligence of the master and crew in navigation or management of the vessel.[1] For purposes of summary judgment, it is undisputed that the seizure would not have occurred without the negligence of the master in failing to return to port and failing to see that the ship had the proper permits.

In each policy is a "paramount" warranty called a Free of Capture and Seizure Clause. This provision excludes coverage when the cargo is confiscated:

> The following Warranties shall be paramount and shall not be modified or superseded by any other provision included

---

[1] "This insurance is also specially to cover any loss of or damage to the interest insured hereunder, through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation or management of the vessel by the master, mariners, mates, engineers, and pilots."

herein or stamped or endorsed hereon unless such other provision refers specifically to the risks excluded by these Warranties and expressly assumes the said risks.

Notwithstanding anything contained herein to the contrary, this insurance is warranted free from:

(1) capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise; . . .

The insurers denied coverage for the loss of the cargo based on the Free of Capture and Seizure Clause. The cargo owners sued for coverage under the Inchmaree clause of the main policy and under a supplemental war risk policy. The insurers moved for summary judgment. The trial court summarily declared there was no coverage under the war risk policy, but left open the question of coverage under the marine cargo policy. The court ruled that the case must proceed to trial to resolve an issue of fact as to whether the damage suffered by the cargo owners was caused by the excluded peril of the seizure itself, or by the negligent conduct of the master and crew, a covered peril. The insurers appeal.

■ ■ Although denial of summary judgment is ordinarily not appealable, this court granted discretionary review. In reviewing summary judgment, this court engages in the same inquiry as the trial court. *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 451, 842 P.2d 956 (1993). Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider all facts and inferences from those facts in the light most favorable to the nonmoving party. *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 186, 840 P.2d 851 (1992).

A threshold issue is whether state or federal law provides the governing law for this dispute. The insurance contract does not contain a choice of law provision. While the insurers advocate for the application of federal admiralty law, the cargo owners argue that state law applies.

Historically, the substantive law of marine insurance is federal maritime law. *Insurance Co. v. Dunham*, 78 U.S. (11 Wall.) 1, 20 L. Ed. 90 (1870). In general, federal maritime law looks to the decisions of English courts due to "special reasons for keeping in harmony with the marine insurance laws of England". *Queen Ins. Co. of Am. v. Globe & Rutgers Fire Ins. Co.*, 263 U.S. 487, 493, 44 S. Ct. 175, 68 L. Ed. 402 (1924). However, in a 1955 United States Supreme Court decision, *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 75 S. Ct. 368, 99 L. Ed. 337 (1955), the Court held that the regulation of marine insurance should be left to state law in the absence of an established admiralty rule governing the warranties at issue. "The control of all types of insurance companies and contracts has been primarily a state function since the States came into being." *Wilburn Boat*, 348 U.S. at 316. The cargo owners argue that under *Wilburn Boat*, this marine insurance coverage dispute is governed by state law.

*Wilburn Boat* involved hull insurance for a houseboat, destroyed by fire while moored on a small artificial lake between Texas and Oklahoma. The insurance policy provided that the ownership could not be transferred without permission of the underwriters and that the boat could not be used for commercial purposes. The owners of the boat breached these policy provisions. Under Texas law, policy breaches are immaterial unless they contributed to the loss. The federal courts below declared that federal admiralty law required denial of coverage because of the policy breaches. The Supreme Court reversed. Because no federal admiralty rule existed as to the consequences of policy breaches, and the Court held it was inappropriate to fashion one, the case was remanded for trial under appropriate state law.

In *Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S. Ct. 886, 6 L. Ed. 2d 56 (1961), the Supreme Court clarified the principle of *Wilburn Boat* in holding that federal admiralty law rather than state law determined the validity of a

shipowner's oral contract. The Court said that state law had applied in *Wilburn Boat* only because there was no federal rule to turn to, whereas in *Kossick* there was a well-established admiralty rule recognizing the validity of oral contracts. The *Kossick* Court also mentioned Justice Frankfurter's concurrence in *Wilburn Boat*, in which he attributed the application of state law in that case to the localized nature of the houseboat transaction: "It is reasonable to conclude that the interests concerned with shipping in its national and international aspects are substantially unconcerned with the rules of law to be applied to such limited situations." *Wilburn Boat*, 348 U.S. at 322 (Frankfurter, J., concurring). Maritime law is favored where there is a "more genuinely salty flavor." *Kossick*, 365 U.S. at 742.

■ In engaging in choice of law analysis between state law and admiralty law, Washington courts employ the analysis of *Wilburn Boat* and *Kossick* and hold that state law "controls the interpretation of a marine insurance policy only in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice." *Ross v. Frank B. Hall & Co.*, 73 Wn. App. 630, 634, 870 P.2d 1007 (1994) (no well-established federal rule on the deductibility of defense costs from a marine insurance policy); *see also Wolstein v. Yorkshire Ins. Co.*, 97 Wn. App. 201, 209-10, 985 P.2d 400 (1999) (state law applied because a ship is not subject to admiralty jurisdiction until launched).

The cargo owners contend that there is no judicially established federal admiralty rule on the issue of proximate cause, or, if there is, it does not preempt state law because it is not in conflict with it. They assert that the proximate cause rule that the courts apply in admiralty cases is not really an admiralty rule, but a general common law rule.

■ The efficient proximate cause rule used in insurance coverage disputes is stated much the same way under both state law and federal law. Where a loss occurs due to a combination of causes, and one of those causes is excluded by the policy, federal admiralty law resolves the question of

coverage by deciding which cause is dominant or "efficient." ALEX L. PARKS, THE LAW AND PRACTICE OF MARINE INSURANCE AND AVERAGE, 413 (1987). As under Washington law, the immediate physical cause or the cause nearest in time to a loss is not necessarily the proximate cause. *See Graham v. Public Employees Mut. Ins. Co.*, 98 Wn.2d 533, 537-38, 656 P.2d 1077 (1983) and *Lanasa Fruit S.S. & Importing Co. v. Universal Ins. Co.*, 302 U.S. 556, 564-65, 58 S. Ct. 371, 82 L. Ed. 422 (1938).

But the issue in this case is not how to express the efficient proximate cause rule. Rather, it is how to apply the efficient proximate cause rule in the interpretation of the Free of Capture and Seizure Clause in a marine cargo insurance policy. On that issue, the federal admiralty rule is well established. For example, in *Commodities Reserve Co. v. St. Paul Fire & Marine Insurance Co.*, the Ninth Circuit court stated: "Because federal admiralty law adequately covers this area, we need not consider state law." *Commodities Reserve*, 879 F.2d 640, 642 (9th Cir. 1989) (applying federal law to decide that loss caused by seizure of vessel was excluded from coverage under the Free of Capture and Seizure Clause of an all-risk policy).

The Free of Capture and Seizure Clause is standard in marine cargo insurance, dating back to the Napoleonic wars. *See* PARKS, *supra* at 317. Interpretation of the clause presents a need for the uniformity and predictability of the federal maritime rule, because as this case demonstrates, disputes about the clause are particularly likely to arise between parties in different countries rather than in localized circumstances like the destroyed houseboat in *Wilburn Boat*. The effect of the exclusion should predictably be the same in this suit, litigated in King County Superior Court, as it would be in federal district court for the District of Washington (which would follow *Commodities Reserve*).

The cargo owners rely on a case from the Fifth Circuit, *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir.), *cert. denied*, 502 U.S. 901 (1991), for the proposition that Washington law should apply because it is not materially

different from admiralty law. In an attempt to provide guidance in the choice of law analysis under *Wilburn Boat*, the Fifth Circuit identified three factors that courts should consider. The court held that state law should not apply if the federal maritime rule constitutes "entrenched federal precedent", or if state law materially differs from the federal maritime rule, or if the state has no substantial and legitimate interest in the application of its own law. *Anh Thi Kieu*, 927 F.2d at 888. This test does not change the result in cases where, as here, there is an established federal maritime rule. The cargo owners have not cited any case in which a court has applied state law to determine the effect of a Free of Capture and Seizure warranty in a marine insurance policy. We therefore disregard the Washington line of cases applying the efficient proximate cause rule in other contexts.

The trial court ruled a trial was necessary to decide whether the efficient proximate cause of the loss of the cargo was the seizure itself, or the negligence of the master that led to the seizure. The court relied on *Standard Oil Co. v. United States*, 340 U.S. 54, 71 S. Ct. 135, 95 L. Ed. 68 (1950). In that 1950 Supreme Court case, the issue was whether a war risk policy issued by the United States covered losses caused by a collision between a Standard Oil tanker and a navy minesweeper. The policy provided coverage for "all consequences of hostilities or warlike operations." *Standard Oil*, 340 U.S. at 55. Standard Oil argued that under certain English decisions, a collision with a moving warship was, as a matter of law, the consequence of the minesweeping activity, undisputedly a warlike operation. *Standard Oil*, 340 U.S. at 58. The Court held, however, that the determination of whether minesweeping was a proximate cause of the collision was properly treated as a question of fact. *Standard Oil*, 340 U.S. at 59. The Court acknowledged the desirability of achieving uniformity with the English courts in the interpretation of marine insurance contracts, but found that the English cases were not uniform as to this particular clause, and that the English

decisions cited by Standard Oil had produced such an unfavorable reaction among underwriters that they rewrote the clause to avoid the effect of the decisions. The Court noted that the most recent decision of the House of Lords on the subject warned against following cases where coverage had been found to exist as a matter of law; those cases "will easily lead to error if it is attempted to extract from them a principle of law to solve what is a question of fact." *Standard Oil*, 340 U.S. at 60 (citation omitted).

The cargo owners, citing *Standard Oil*, say that because the identification of efficient proximate cause is intrinsically fact-driven, it is inappropriate to resolve it on summary judgment. That misstates the case. What *Standard Oil* narrowly holds, with respect to a clause insuring against "all consequences of" warlike operations, is that coverage exists only if there is "some causal relationship between the warlike operation and the collision," *Standard Oil*, 340 U.S. at 57, and this is a factual determination to be made by using the concept of proximate cause. Because of the different wording, purpose, and history of the Free of Capture and Seizure warranty, the holding of *Standard Oil* as to the interpretation of the warlike operations clause has little if any relevance to the question in this case.

The clause at issue here warrants the marine cargo insurance free from capture, seizure, and the consequences thereof, whether lawful or otherwise. The policy declares this warranty to be paramount. The clause is not to be superseded by any other provision of the policy unless that provision expressly assumes the risks of capture and seizure.

It is difficult to imagine how the policy could more clearly state that loss due to seizure is not covered under any circumstances. The cargo owners point out that another exclusion in the same policy, warranting the insurance free of claim for loss arising from delay, ends with the phrase "whether caused by a peril insured against or otherwise." They claim that the Free of Capture and Seizure warranty, because it does not use this same phrase, leaves open the

possibility that the negligence of the master—a peril insured against—can be found to be the efficient proximate cause of the loss if it caused the seizure. *Cf. Archer-Daniels-Midland Co. v. Phoenix Assur. Co.*, 975 F. Supp. 1137, 1147 (S.D. Ill. 1997) (commenting that the phrase "whether caused by a peril insured against or otherwise" was added to the Delay Clause to overcome the suggestion in *Lanasa Fruit* that losses caused by delay are covered if the delay was caused by an insured peril).

■ We decline the invitation to import the history of the Delay Clause into our consideration of the Free of Capture and Seizure warranty. Federal courts have consistently interpreted this warranty as providing that a loss is due to seizure even if the seizure resulted from an insured peril such as the negligence of the master, so long as the insured peril did not endanger the cargo independently of the seizure. *See Blaine Richards & Co. v. Marine Indem. Ins. Co. of Am.*, 635 F.2d 1051, 1055 (2d Cir. 1980) ("In cases involving detention, courts have generally not followed losses back to prior events. . . . the common sense understanding [is] that the temporary physical loss of the beans was caused by detention."); *Commodities Reserve*, 879 F.2d at 644 ("The dominant cause of the potential loss from infestation was the detention in Crete. Commodities Reserve forwarded the cargo only because it was detained. No danger from infestation existed apart from the detention.").

In *Tillery v. Hull & Co.*, a 1989 case, the Eleventh Circuit affirmed the verdict of a bench trial, in which the district court found that the damage to the vessel was caused when Jamaican authorities seized it, not by the captain's drug trafficking activities that precipitated the seizure. *Tillery*, 876 F.2d 1517 (11th Cir. 1989). As in the instant case, the policy covered losses caused by the captain's misconduct, but the Free of Capture and Seizure Clause excluded losses due to seizure. The court followed the rule in *Blaine Richards* and held that the proximate cause for the loss was the arrest of the vessel, not the underlying cause of the arrest. The ship "was not damaged by the barratry of its

master; it was damaged only after it was seized by the Jamaican authorities. Such contingencies are specifically excluded from coverage". *Tillery*, 876 F.2d at 1520.

We see no reason not to follow *Blaine Richards, Commodities Reserve*, and *Tillery* in the present case where the facts fit squarely within the precedent established by those cases. It is unlikely that these federal courts have misunderstood *Wilburn Boat* or *Standard Oil*. *Blaine Richards*, in particular, has been widely cited by other courts and by commentators without any hint that it is not in accord with the law of the United States Supreme Court.

Here, there is no allegation that the negligence of the vessel's master or the charter company caused any independent, distinct damage to the cargo, apart from the fact that their conduct resulted in confiscation. There is no evidence that the cargo would have been lost or damaged in any way if the seizure had not occurred. The misconduct of the master may have caused the seizure, but is too remote to be considered a proximate cause of the loss of the cargo. Under federal maritime law the efficient proximate cause of the loss is the seizure. Thus, the Free of Capture and Seizure Clause excludes coverage for the loss. The order denying the insurers' motion for summary judgment must be reversed.

## II

The cargo owners also purchased a separate policy insuring against war risks. In their cross-appeal, the cargo owners argue that even if coverage is excluded under the Free of Capture and Seizure warranty, the separate war risk policy covers the loss. The trial court granted summary judgment to the insurers on this issue because the seizure was not an act of war.

The policy is titled "War Risk Only Cargo." In relevant part, the policy states:

> This insurance is only against the risks of capture, seizure, destruction or damage by men-of-war, piracy, takings at sea,

arrests, restraints, detainments and other warlike operations and acts of kings, princes and peoples in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise . . . .

The cargo owners contend that if the Free of Capture and Seizure warranty excludes loss caused by a peacetime government seizure, then the war risk policy necessarily reinstates that coverage. They rely on the history of the interplay between the Free of Capture and Seizure Clause and war risk policies.

Underwriters initially introduced the Free of Capture and Seizure Clause as a means to exclude wartime perils from the perils covered in standard policies. PARKS, *supra* at 317. After the introduction of this provision, if wartime risks were to be covered, it was through the use of separate war risk policies or endorsements. PARKS, *supra* at 317.

■ Therefore, at one time, the cargo owners' argument was correct. Losses excluded by the Free of Capture and Seizure Clause were covered by a war risk policy, if one chose to purchase it. However, although the original purpose of the Free of Capture and Seizure Clause was to exclude only wartime losses, it is now interpreted to exclude losses caused by arrests, seizures and detentions by governmental authorities during peacetime as well. *See Blaine Richards*, 635 F.2d at 1053; 2 THOMAS, J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 431 n.10 (2d Ed. 1994). There is no authority supporting the argument that war risk coverage has been similarly interpreted to extend to peacetime losses. In fact, one commentator notes that "war risk coverage is not as broad as if the Free of Capture and Seizure Clause were merely deleted." PARKS, *supra* at 317.

The cargo owners also argue that the language of the war risk policy itself includes both war and nonwar risks. They point to the fact that some of the words used in the Free of Capture and Seizure Clause are also used in the war risk policy, such as "capture", "seizure", and "arrest." But in the war risk policy these words are modified by the phrase "and

other warlike operation and acts" and "in prosecution of hostilities." As might be expected from the policy's title, "War Risk Only," these modifying phrases unambiguously limit the policy's coverage to war risks. The trial court properly found the war risk policy inapplicable to cargo seizures outside of the context of war.

The order denying the insurers' motion for summary judgment on the Marine Open Cargo policies is reversed. The trial court is directed to order summary judgment in favor of the insurers and to declare that coverage was properly denied on the basis of the Free of Capture and Seizure Clause. The order of summary judgment denying coverage under the war risk policy is affirmed.

Cox and ELLINGTON, JJ., concur.

Review denied at 142 Wn.2d 1029 (2001).